[No. S060180. Feb. 11, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
RUSSELL D. WOODELL, Defendant and Appellant.

**COUNSEL**

Susan S. Bauguess, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Sanjay T. Kumar, Pamela C. Hamanaka and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CHIN, J.**—In determining whether an out-of-state conviction qualifies as a prior serious felony conviction under California law, the trier of fact may

look to the entire record of the conviction but no further. (*People* v. *Myers* (1993) 5 Cal.4th 1193, 1195 [22 Cal.Rptr.2d 911, 858 P.2d 301]; *People* v. *Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150].) The question here is whether the appellate opinion disposing of the appeal in the case is part of the record of the conviction for this purpose. Specifically, we must decide whether the jury was entitled to consider the appellate opinion to help determine whether the conviction was based upon personal use of a deadly weapon, a requirement for the sentencing provision involved here.

We conclude the record of the conviction is not limited to the *trial* court record but extends to the *appellate* court record, including the appellate opinion. The trier of fact in this case properly considered the appellate opinion to help determine the existence and nature of the defendant's prior conviction. Accordingly, we affirm the judgment of the Court of Appeal.

## I. THE FACTS

An information charged defendant, Russell D. Woodell, with burglary. It also alleged that he had been convicted of and served prison terms for two prior violent or serious felonies in North Carolina. The prior conviction at issue here was for assault with a deadly weapon inflicting serious injury.

At trial, the prosecution presented documents showing that defendant had been indicted in North Carolina for assault with a pair of scissors, a deadly weapon, with the intent to kill and inflicting serious injury, and that he pleaded guilty to assault with a deadly weapon inflicting serious injury. Over defense objection, the court also admitted the opinion of the North Carolina Court of Appeals on the subsequent appeal to help prove that defendant had been convicted of a crime on the basis that he personally used a deadly weapon.

The opinion stated that defendant contended "the court erred by failing to find as a statutory mitigating factor that defendant acted under strong provocation. He testified that over a two-month period the victim had been threatening to sexually assault him if he did not repay an alleged debt and that on the morning of the assault, the victim told him that 'if I didn't come to school in the afternoon don't come.' Defendant stated he interpreted this statement as a threat to sexually assault him." The North Carolina court rejected the contention. "We do not believe the evidence compels a finding that he acted under adequate provocation. The evidence shows that at approximately 8:45 a.m. on the morning of the assault, defendant told another inmate that he was going to 'kill somebody.' This inmate also

indicated that he saw defendant sharpening a scissor blade at 1:00 p.m. and that defendant was still sharpening the blade at 1:35 p.m. Approximately five minutes later, he saw defendant stab the victim from behind with the scissor blade. Under these circumstances, we hold the court did not err by failing to find the mitigating factor."

A jury convicted defendant of first degree burglary and found the allegations, including the prior assault conviction, to be true. The court sentenced defendant to state prison for a total of 35 years to life. The Court of Appeal remanded for resentencing but otherwise affirmed. It concluded that the appellate opinion was not part of the record of conviction, but it "was admissible in this case to explain the indictment and guilty plea," which *were* part of the record. We granted defendant's petition for review.

## II. DISCUSSION

### A. *Introduction*

Various sentencing statutes in California provide for longer prison sentences if the defendant has suffered one or more prior convictions of specified types. A highly publicized example is the "Three Strikes" law adopted in 1994, which is involved in this case. (See *People* v. *Superior Court (Romero)* (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628].) In general, this "legislation provides longer sentences for certain prior serious or violent felonies popularly denoted 'strikes.'" (*People* v. *Hazelton* (1996) 14 Cal.4th 101, 104 [58 Cal.Rptr.2d 443, 926 P.2d 423].)

Sometimes the definition of the qualifying prior conviction is not completely congruent with the definition of the crime of which the defendant has been convicted. For example, in *Guerrero*, the alleged prior conviction was for a " 'burglary of a residence.' " (*People* v. *Guerrero, supra*, 44 Cal.3d at p. 346 [quoting Pen. Code, former § 1192.7, subd. (c)(18)].) The statutory use of the phrase, "burglary of a residence," posed a problem because "there is no offense specifically so defined in the Penal Code." (*Guerrero, supra*, at p. 346.) A particular burglary conviction might or might not have involved a residence. We had to decide how the trier of fact in that and similar situations could determine whether the prior conviction qualified under the sentencing scheme.

In *Guerrero*, we concluded that, "in determining the truth of a prior-conviction allegation, the trier of fact may look to the entire record of the conviction" but, we made clear, "*no further*." (*People* v. *Guerrero, supra*, 44 Cal.3d at p. 355, original italics.) This rule, we explained, "is both fair

and reasonable. To allow the trier of fact to look to the entire record of the conviction is certainly reasonable: it promotes the efficient administration of justice and, specifically, furthers the evident intent of the people in establishing an enhancement for 'burglary of a residence'—a term that refers to *conduct*, not a specific *crime*. To allow the trier to look to the record of the conviction—*but no further*—is also fair: it effectively bars the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial." (*Ibid.*, original italics.)

The problem often arises when the defendant's prior conviction is from another jurisdiction. ■ As the Court of Appeal in this case succinctly stated, "In order for a prior conviction from another jurisdiction to qualify as a strike under the Three Strikes law, it must involve the same conduct as would qualify as a strike in California." There is, however, no guarantee the statutory definition of the crime in the other jurisdiction will contain all the necessary elements to qualify as a predicate felony in California. In this case, defendant was convicted in North Carolina of assault with a deadly weapon inflicting serious injury. To qualify for the sentencing scheme at issue here, that conviction must be for a "felony in which the defendant personally used a dangerous or deadly weapon." (Pen. Code, § 1192.7, subd. (c)(23).) The weapon use must be *personal*, not vicarious; aiding and abetting another who used a deadly weapon would not suffice. (See *People v. Piper* (1986) 42 Cal.3d 471, 475-476 [229 Cal.Rptr. 125, 722 P.2d 899].) The parties agree that, under North Carolina law, defendant's conviction itself does not necessarily show he personally used a deadly weapon.

■ In *People v. Myers, supra,* 5 Cal.4th 1193, we held that the rule of *People v. Guerrero, supra,* 44 Cal.3d 343, applies to out-of-state convictions as well as to California convictions. Because a "defendant whose prior conviction was suffered in another jurisdiction is . . . subject to the same punishment as a person previously convicted of an offense involving the same conduct in California," we said, "the trier of fact must be permitted to go beyond the least adjudicated elements of the offense and to consider, if not precluded by the rules of evidence or other statutory limitation, evidence found within the entire record of the foreign conviction." (*People v. Myers, supra,* 5 Cal.4th at p. 1201; see also *id.* at p. 1195 ["Just as it may do when the prior conviction was suffered in California [citing *Guerrero*], the trier of fact may consider the entire record of the proceedings leading to imposition of judgment on the prior conviction to determine whether the offense of which the defendant was previously convicted involved conduct which satisfies all of the elements of the comparable California serious felony offense."].)

To prove that defendant was convicted of a crime in North Carolina involving conduct satisfying the elements of the California statute, i.e., to prove that he was convicted of a crime based on personal use of a deadly weapon, the prosecution presented documents showing the crime with which he was charged and to which he pleaded guilty. Additionally, the court admitted a copy of the opinion in the subsequent appeal. That opinion indicated defendant did personally use the deadly weapon. It contained no suggestion that defendant merely aided and abetted some other person who actually wielded the weapon. We must decide whether the court properly admitted the opinion for this purpose.

Defendant argues: (1) the opinion is not part of the "entire record of the proceedings leading to imposition of judgment on the prior conviction" that the trier of fact may consider (*People* v. *Myers*, *supra*, 5 Cal.4th at p. 1195); and (2) the portion of the appellate opinion on which the prosecution relies is hearsay when used to show defendant's conduct, and its use is therefore "precluded by the rules of evidence" (*id.* at p. 1201).

## B. *Record of Conviction*

We have never defined exactly what comprises the record of conviction to which the trier of fact may look to determine whether a prior conviction qualifies as a serious felony. (See *People* v. *Reed* (1996) 13 Cal.4th 217, 223 [52 Cal.Rptr.2d 106, 914 P.2d 184].)

A Court of Appeal decision predating *Myers* "determine[d] 'the record of the prior conviction' means all items that could have been used on appeal of that prior conviction, specifically, any items considered a normal part of the record under California Rules of Court, rule 33 or by which it could be augmented pursuant to California Rules of Court, rule 12." (*People* v. *Abarca* (1991) 233 Cal.App.3d 1347, 1350 [285 Cal.Rptr. 213].) At one point in *Myers*, we referred to the "record of the proceedings leading to imposition of judgment on the prior conviction . . . ." (*People* v. *Myers*, *supra*, 5 Cal.4th at p. 1195.) From these cases, a Court of Appeal decision filed a few days before *People* v. *Reed*, *supra*, 13 Cal.4th 217, concluded that "documents prepared *after* conviction and sentencing are not part of the 'record of conviction.' A document prepared after judgment, by definition, is not part of the record '*leading* to imposition of judgment.'" (*People* v. *Lewis* (1996) 44 Cal.App.4th 845, 852 [52 Cal.Rptr.2d 338], italics added in *Lewis*.)

Relying primarily on these decisions, defendant argues that the North Carolina appellate opinion was prepared after conviction and sentencing and

was, therefore, not a record leading to imposition of judgment. For this reason, defendant concludes, the opinion is not part of the record of conviction to which the trier of fact may look to determine the truth of the prior conviction allegation. We disagree. Describing the record of conviction as including documents that may be part of the record on appeal (*People* v. *Abarca, supra,* 233 Cal.App.3d at p. 1350) might be useful to help define the trial court documents that the trier of fact may consider, but we do not believe the record of conviction is limited to *trial* court documents. It also includes *appellate* court documents at least up to finality of the judgment. *Myers* should not be interpreted as implying that records from the appellate court may not also be part of the record of conviction.

A similar issue arose in *People* v. *Harbolt* (1997) 61 Cal.App.4th 123 [71 Cal.Rptr.2d 459], review granted October 15, 1997 (S063658), opinion ordered partially published February 11, 1998.█ There, the prosecution offered an appellate opinion to show the defendant had suffered the prior conviction. The trial court judicially noticed the opinion. Like defendant here, Harbolt argued "that admission of the appellate opinion was erroneous because it was prepared after judgment and is therefore not part of the prior record of conviction." (*Id.* at p. 126.) The Court of Appeal disagreed: "Evidence Code section 452, subdivision (d) provides, in relevant part, that judicial notice may be taken of the records of 'any court of record of the United States or of any state of the United States.' Evidence Code section 453 requires the trial court to 'take judicial notice of any matter specified in Section 452 if a party requests it and' has given the adverse party sufficient notice and furnishes the court with sufficient information to enable it to take judicial notice of the matter. Evidence Code sections 452 and 453 permit the trial court to 'take judicial notice of the *existence* of judicial opinions and court documents, along with the truth of the results reached—in the documents such as orders, statements of decision, and judgments—but [the court] cannot take judicial notice of the truth of hearsay statements in decisions or court files, including pleadings, affidavits, testimony, or statements of fact.' (*Williams* v. *Wraxall* (1995) 33 Cal.App.4th 120, 130, fn. 7 [39 Cal.Rptr.2d 658]; [see also] *Gilmore* v. *Superior Court* (1991) 230 Cal.App.3d 416, 418 [281 Cal.Rptr. 343].) Thus, in *People* v. *Padilla* (1995) 11 Cal.4th 891, 961, footnote 6 [47 Cal.Rptr.2d 426, 906 P.2d 388], our Supreme Court took judicial notice of an unpublished opinion . . . to show that a codefendant had been convicted of murder, conspiracy to commit murder and solicitation to commit murder." (*Id.* at pp. 126-127, original italics.)

The *Harbolt* court said the argument that an appellate opinion may not be consulted to determine what convictions a defendant suffered "defies common sense, elevating form over substance. In holding that the trier of fact

may not look beyond the record of conviction, the high court did not intend to create arbitrary and artificial barriers to proving the existence of the prior conviction. Rather, it merely intended to prevent the People from introducing new evidence outside the record of the prior proceedings. (*People v. Reed, supra*, 13 Cal.4th at p. 226.) Noticing the appellate opinion for the limited purpose of proving the existence of the . . . convictions certainly does not require consideration of facts beyond those necessarily adjudicated in the prior proceedings. (*People v. Guerrero, supra*, 44 Cal.3d at p. 355.) Indeed, adoption of defendant's argument would actually frustrate another stated purpose of the holding which is to 'promote[] the efficient administration of justice.' (*Ibid.*) Thus, admission of the opinion is not precluded by *Guerrero* and its progeny." (*People v. Harbolt, supra*, 61 Cal.App.4th at pp. 127-128, review granted Oct. 15, 1997 (S063658), opn. ordered par. pub. Feb. 11, 1998.)

We agree with *Harbolt*. We see no reason to limit the record of conviction to the trial court record and to preclude reference to the appellate court record, including the appellate opinion. Indeed, the appellate record might show the conviction was no longer valid. As the Attorney General notes, it would be absurd to preclude reference to an appellate opinion to show that a conviction had been reversed or modified to a lesser, nonqualifying offense. We also see no basis for allowing one party (the defendant), but not the other party (the prosecution), to rely on the appellate opinion. As we explained in *Guerrero*, we allow recourse to the record of conviction, but no further, to promote the efficient administration of justice and to preclude the relitigation of the circumstances of the crime. (*People v. Guerrero, supra*, 44 Cal.3d at p. 355.) Including the appellate opinion as part of the record of conviction promotes efficiency and does not relitigate stale factual questions.

Allowing consideration of the appellate opinion makes practical sense. An opinion that either affirms, reverses, or modifies a conviction is one of the most logical sources to consider in determining the truth of the prior conviction allegation. The trial court record alone might be incomplete because it might not include a later reversal or modification. The appellate opinion reflects what is in the trial record. Often, it will be more practical to obtain the opinion than the trial record, especially when the conviction is old and from a distant locale. The record, including transcripts, might be massive; the local authorities might be reluctant to part with it even temporarily; the cost of copying it might be prohibitive; and the prosecution might not be able to send an investigator to a foreign jurisdiction like North Carolina to seek and examine it. Additionally, the record might have been destroyed during the many years that sometimes elapse between the finality of a conviction and its use in California. Obtaining the opinion, which reflects

the trial record, might be easy, while obtaining the actual trial record might be impractical or even impossible.

The Court of Appeal here found that the opinion was not part of the record of conviction (but was admissible to corroborate or explain that record). One reason it gave is that "an appellate opinion is not always reliable to establish a foreign prior. The author of an appellate opinion gleans facts from the record and may characterize them so as to emphasize a point pertinent to the issues raised on appeal. Opinions gloss over or omit facts not germane or indispensable to a determination of a particular issue. For example, sentencing issues may not require a thorough recitation of the facts. The facts not contained in an opinion may be the very facts necessary to determine whether an offense qualifies as a serious or violent felony for purposes of the Three Strikes law."

We find this reasoning unpersuasive. It is certainly correct that an appellate opinion might not supply all answers. A future reader of this opinion, for example, seeking to learn the facts underlying the crime of this case will seek in vain. Those facts are not relevant to the sole issue before us, so we do not include them. But because *some* opinions might not be probative on a given question is no reason to exclude *all* opinions, including those that *are* probative. If the appellate court did state the pertinent facts, a trier of fact is entitled to find that those statements accurately reflect the trial record. Moreover, the defendant, who suffered the conviction and took the appeal, would know of and be able to challenge any material flaws or omissions in the opinion. (The record of this case suggests the reason defendant did not challenge the appellate opinion's statement that he personally used the weapon. In a declaration filed for a different purpose in the trial court of this case (and therefore *not* part of the record of the North Carolina conviction), defendant specifically stated, "I . . . stabbed [the victim] with the scissors on his left side.")

We do not hold that all appellate opinions will, alone, be sufficient to establish whether a prior conviction qualifies as a serious felony under the Three Strikes law, or even that all opinions will be relevant to the question. Rather, we hold that appellate opinions, in general, are part of the record of conviction that the trier of fact may consider in determining whether a conviction qualifies under the sentencing scheme at issue. Whether and to what extent an opinion is probative in a specific case must be decided on the facts of that case.

C. *Hearsay*

Defendant also argues that, even if an appellate opinion may be used to show the existence of a conviction, the portions of the opinion referring to

statements of another are inadmissible hearsay when offered to prove the truth of those statements. Use of the opinion for this purpose, he continues, is "precluded by the rules of evidence . . . ." (*People* v. *Myers, supra,* 5 Cal.4th at p. 1201.) For example, in *People* v. *Harbolt, supra,* 61 Cal.App.4th 123, review granted October 15, 1997 (S063658), and opinion ordered partially published February 11, 1998█, the opinion was used solely to prove the existence of the conviction, not to prove the underlying conduct. Citing *Williams* v. *Wraxall* (1995) 33 Cal.App.4th 120, 130, footnote 7 [39 Cal.Rptr.2d 658] and *Gilmore* v. *Superior Court* (1991) 230 Cal.App.3d 416, 418 [281 Cal.Rptr. 343], defendant argues the court could not judicially notice the truth of hearsay statements contained within the opinion.

Preliminarily, the Attorney General argues that defendant did not object at trial to this precise use of judicial notice, and therefore he may not make the argument on appeal. It is not clear whether the trial court judicially noticed the opinion or simply admitted a copy into evidence. But, either way, defendant specifically objected to the opinion as "hearsay." That objection was sufficient to preserve this contention.

The normal rules of hearsay generally apply to evidence admitted as part of the record of conviction to show the conduct underlying the conviction. (*People* v. *Reed, supra,* 13 Cal.4th 217.) In *Reed,* we held that a transcript of testimony from the preliminary hearing was properly admitted because the transcript came within the official records exception to the hearsay rule, and the testimony came within the former-testimony exception. (*Id.* at p. 225.) We also held, however, that an excerpt from the probation officer's report was not admissible because it contained hearsay that came within no exception. (*Id.* at pp. 230-231.) In this case, the appellate opinion itself, representing the action of a court, clearly comes within the exception to the hearsay rule for official records. (Evid. Code, § 1280; see *People* v. *Harbolt, supra,* 61 Cal.App.4th at p. 126, fn. 3, review granted Oct. 15, 1997 (S063658), opn. ordered par. pub. Feb. 11, 1998█.) Indeed, a court may judicially notice the existence of judicial opinions. (*People* v. *Harbolt, supra,* 61 Cal.App.4th at pp. 127-128, review granted Oct. 15, 1997 (S063658); opn. ordered par. pub. Feb. 11, 1998█; Evid. Code, § 452, subd. (d).)

Defendant does not argue to the contrary. Rather, he focuses on the hearsay nature of the statements in the opinion regarding defendant's use of the weapon. The fact that a court may judicially notice an opinion under Evidence Code section 452 or admit it into evidence under the official record exception to the hearsay rule (Evid. Code, § 1280)—the two processes seem to be equivalent for our purposes—does not mean that all hearsay statements within the opinion are also admissible or noticeable. Generally, when there

is "multiple hearsay, the question is whether each hearsay statement fell within an exception to the hearsay rule. (Evid. Code, § 1201.)" (*People* v. *Reed*, *supra*, 13 Cal.4th at pp. 224-225.) Defendant argues that the statements cited in the opinion do not come within any exception to the hearsay rule and are, therefore, neither admissible nor judicially noticeable. The North Carolina opinion does not indicate the precise source of the statements, so it is impossible to determine whether they, like the preliminary hearing testimony in *Reed*, come within the former testimony exception, or some other exception, to the hearsay rule.

But even if no exception to the hearsay rule exists, we believe the opinion was admissible for a proper *nonhearsay* purpose. The factual question before the jury was narrow: whether the defendant has "one or more prior felony convictions" for a qualifying offense. (Pen. Code, § 1170.12, subd. (a).) Because the nature of the *conviction* is at issue, the prosecution is not allowed to go outside the record of conviction to "relitigat[e] the circumstances of a crime committed years ago . . . ." (*People* v. *Guerrero*, *supra*, 44 Cal.3d at p. 355.) The trier of fact was called upon here to determine only whether defendant suffered a conviction involving personal use of the weapon. (Pen. Code, § 1192.7, subd. (c)(23).) One way to make that determination is to look to the record of conviction "to show the nature of defendant's conduct underlying his prior assault conviction." (*People* v. *Reed*, *supra*, 13 Cal.4th at p. 224.) Evidence used for this purpose must comply with the hearsay rule. (*Ibid.*)

However, because the ultimate question is, of what crime was the defendant *convicted*, another way to decide this question is to look to a court ruling, including an appellate opinion, for the nonhearsay purpose of determining the basis of the conviction. Specifically, in this case, the trier of fact could look to the opinion to determine whether the basis for the conviction was personal use of the weapon or vicarious liability for someone else who personally used the weapon. In *People* v. *Reed*, *supra*, 13 Cal.4th at pages 230-231, the probation officer's report did not necessarily speak for the court, so hearsay statements within that report had to meet an exception to the hearsay rule to be admissible. By contrast, an appellate opinion is a judicial statement and can help determine the nature of the crime of which the defendant had been convicted.

The North Carolina opinion contained a number of statements that, if offered for their truth, would be inadmissible unless an exception to the hearsay rule applied. (Evid. Code, § 1200.) Defendant focuses on the "evidence" discussed in the opinion from an inmate that defendant said he would " 'kill somebody,' " that defendant was sharpening a scissor blade at certain

times, and that defendant stabbed the victim from behind. If offered to prove that defendant did precisely those things, the evidence would be hearsay. The question before the jury, however, was not whether defendant did precisely those things, but only whether defendant's conviction was based on personal weapon use or vicarious liability. The opinion, as a whole, can be considered to decide this question. The appellate court's discussion of the evidence is relevant and admissible, not to show exactly what the defendant did, but to show whether the trial court found, at least impliedly, that the conviction was based on personal use rather than vicarious liability.

The admissibility of an appellate opinion used for this nonhearsay purpose does not turn on whether each factual statement in that opinion comes within an exception to the hearsay rule but on whether the opinion logically shows what the original trial court found was the basis of the conviction. When a trial court considers whether to admit an appellate opinion for this purpose, it should focus on the issue the jury has to resolve in determining whether the conviction is a qualifying one. It should carefully consider whether the opinion as a whole, including any factual statements, is probative on whether the conviction was based on a qualifying theory. It should not simply admit any opinion containing relevant factual statements but only those probative on this specific issue. For example, if the opinion refers to facts in a fashion indicating the evidence was disputed and the factual issue unresolved, that reference would have little, if any, tendency to show the basis of the conviction and would, alone, not justify admitting the opinion. If the opinion refers to facts as established, that reference would be probative on the basis for the conviction. A statement in an opinion that the trial court specifically found certain facts would be highly probative on the nature of the conviction.

If the trial court admits for this nonhearsay purpose an appellate opinion that contains factual statements not independently admissible under the hearsay rule, and if the defendant requests a limiting instruction (see Evid. Code, § 355; *People* v. *Collie* (1981) 30 Cal.3d 43, 63-64 [177 Cal.Rptr. 458, 634 P.2d 534, 23 A.L.R.4th 776]), it should explain to the jury the limited purpose for which the opinion is admitted and relate that purpose to the specific question the jury has to resolve. For example, for the prior conviction alleged here, the court would explain to the jury that the opinion is not admitted to show exactly what the defendant did while committing the previous crime but only for the purpose of determining whether the defendant was convicted of a crime based on personal weapon use. Because only the latter question is relevant to the jury's determination, the defense often might not wish such a limiting instruction unless the factual recitation in the opinion was particularly inflammatory. (Here the issue was presented to the

jury. We express no view regarding the respective roles of the court and jury. [See Pen. Code, § 1025.])

Turning to the facts of this case, the issue to be decided in determining whether the North Carolina assault conviction was a qualifying one was whether it was based on defendant's personal use of the weapon rather than vicarious liability. The opinion of the North Carolina Court of Appeals was probative, and therefore admissible, for the nonhearsay purpose of showing what the trial court found on this question. Defendant argued in that court as a mitigating factor that he acted under provocation. Surely, if the conviction had been based on vicarious liability for someone else's actual weapon use, defendant would have argued that circumstance. The appellate court recited the evidence of personal weapon use as a reason for the trial court not to find the mitigating factor that the defendant had acted under provocation. The opinion contained no hint a third party was even involved in the crime, much less actually used the weapon. Based on this opinion and the remaining documents presented to prove the prior conviction, a reasonable trier of fact could find beyond a reasonable doubt that the North Carolina trial court impliedly found that defendant was convicted of the assault because of his personal use of a deadly weapon, and not because of vicarious liability for weapon use by some third party. (See *People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

### III.  CONCLUSION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**MOSK, J.,** Concurring and Dissenting.—In determining the truth of a prior conviction allegation involving the character of the defendant's conduct as well as the nature of his crime, the trier of fact may look to the "record of the conviction," and only to the "record of the conviction." So did we hold in *People* v. *Guerrero* (1988) 44 Cal.3d 343, 355 [243 Cal.Rptr. 688, 748 P.2d 1150] (hereafter sometimes *Guerrero*). That is the rule for all prior convictions, whether suffered outside California or within. (*People* v. *Myers* (1993) 5 Cal.4th 1193, 1195 [22 Cal.Rptr.2d 911, 858 P.2d 301].)

Although the majority rightly conclude that the "record of the conviction" includes an opinion by a reviewing court disposing of an appeal from a judgment of conviction, they wrongly apply it to the facts of this case.

### I

By information, the People charged defendant in the superior court with the serious felony of residential burglary. To bring the cause within the

so-called "Three Strikes" law, they alleged, in substance, that he had previously been convicted of two serious felonies in North Carolina, that is, breaking or entering and assault with a deadly weapon with intent to kill inflicting serious injury. They also alleged that, prior to the present serious felony, he had previously been convicted of the same two serious felonies on charges brought and tried separately. They further alleged that he had served a prior prison term for each. He pleaded not guilty to the charge and denied the allegations.

Trial was by jury. The allegation that defendant had previously been convicted in North Carolina of assault with a deadly weapon as a serious felony under the Three Strikes law involved the character of his conduct— specifically, whether he *personally used* such a weapon, viz., a scissor blade. On this point, the People offered, and the superior court received, three items of evidence that allowed, but did not compel, an inference of personal use: an indictment, a printed form recording a plea of guilty, and a judgment of conviction, all filed in the North Carolina Superior Court. Over defendant's objection that it constituted and/or contained inadmissible hearsay, the People offered,[1] and the superior court received, a single item of evidence that practically compelled a finding of personal use: an opinion of the North Carolina Court of Appeals that affirmed the judgment of conviction. In pertinent part, that opinion states: "Defendant . . . contends that the court erred by failing to find as a statutory mitigating factor that defendant acted under strong provocation. He testified [at a sentencing hearing] that over a two-month period the victim had been threatening to sexually assault him if he did not repay an alleged debt and that on the morning of the assault, the victim told him that 'if I didn't come to school in the afternoon don't come.' Defendant stated he interpreted this statement as a threat to sexually assault him. [¶] A court is compelled to find a mitigating factor only if the evidence offered at the sentencing hearing ' "so clearly establishes the fact in issue that no reasonable inferences to the contrary can be drawn. . . ." ' [Citation.] We do not believe the evidence compels a finding that he acted under adequate provocation. The evidence"—which apparently consisted of an "unsworn statement of a deputy sheriff"—"shows that at approximately 8:45 a.m. on the morning of the assault, defendant told another inmate that he was going to 'kill somebody.' This inmate also indicated that he saw defendant sharpening a scissor blade at 1:00 p.m. and that defendant was still sharpening the blade at 1:35 p.m. Approximately five minutes later, he saw defendant stab the victim from behind with the scissor blade. Under these

---

[1] Albeit reluctantly, preferring instead that the superior court "mak[e] a finding of judicial notice that," in a declaration that he had submitted to it previously, defendant "acknowledged that he personally used the scissors . . . [o]r, in the alternative, that the [North Carolina] Court of Appeal [*sic*] made a finding that [he] personally used the scissors . . . ."

circumstances, we hold the court did not err by failing to find the mitigating factor."

The jury returned a verdict finding defendant guilty of residential burglary, fixing the degree at the first, and made findings that all the allegations were true, including that he had previously been convicted in North Carolina of assault with a deadly weapon as a serious felony under the Three Strikes law. The superior court rendered judgment accordingly, imposing a sentence including a term of thirty-five years to life in prison: an indeterminate term of twenty-five years to life for first degree residential burglary because there was more than one finding of a prior serious felony conviction under the Three Strikes law; a term of five years additional and consecutive for each of the two findings of a prior serious felony conviction on charges brought and tried separately; and a stayed term of one year additional and consecutive for each of the two prior-prison-term findings. It expressed the view that it did not have authority to vacate a finding of a prior serious felony conviction under the Three Strikes law, on its own motion, in furtherance of justice.

In all respects save one, the Court of Appeal affirmed. Among other things, it concluded that the superior court did not err by receiving in evidence the North Carolina appellate opinion: The opinion was not admissible as part of the "record of the conviction"; but it was admissible to explain the indictment, the guilty plea form, and the judgment, which *were* parts thereof. In this respect only did it not affirm: it set aside the sentence under *People* v. *Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628], in which we held that a trial court does indeed have authority to vacate a finding of a prior serious felony conviction under the Three Strikes law, and then remanded the cause for resentencing.

The majority now affirm the judgment of the Court of Appeal. They conclude that the North Carolina appellate opinion was part of the "record of the conviction," and was admissible as such over defendant's hearsay objection.

## II

In *Guerrero*, we held that, in determining the truth of a prior conviction allegation involving the character of the defendant's conduct as well as the nature of his crime, the trier of fact may look to the "record of the conviction," and only to the "record of the conviction." (*People* v. *Guerrero, supra,* 44 Cal.3d at p. 355.)

We based our holding on considerations of fairness and reasonableness. "To allow the trier of fact to look to the . . . record of the conviction"—

indeed, to the "*entire* record of the conviction"—"is certainly reasonable: it promotes the efficient administration of justice and, specifically, furthers the evident intent of the people [or the Legislature] in establishing [certain prior conviction allegations] . . . that refer[] to *conduct*, not a specific *crime*. To allow the trier to look to the record of the conviction—*but no further*—is also fair: it effectively bars the prosecution from relitigating the circumstances of a crime committed years ago and thereby threatening the defendant with harm akin to double jeopardy and denial of speedy trial." (*People* v. *Guerrero, supra*, 44 Cal.3d at p. 355, first italics added, other italics in original.)

The same considerations of fairness and reasonableness support the conclusion that the "record of the conviction" includes an opinion by a reviewing court disposing of an appeal from a judgment of conviction. By its very nature, such an opinion reflects, or at least should reflect, the record properly so called. Another consideration of fairness and reasonableness virtually demands the result, namely, the possibility that the court has reversed the judgment and set aside the conviction.

That the "record of the conviction" includes an appellate opinion, however, does not mean that, in any given case, such an opinion is, in fact, admissible evidence for any purpose. (See *People* v. *Guerrero, supra*, 44 Cal.3d at p. 356, fn. 1.) Rather, its admissibility *vel non* depends on the "rules of evidence [and] other statutory limitation." (*People* v. *Myers, supra*, 5 Cal.4th at p. 1201; accord, *People* v. *Reed* (1996) 13 Cal.4th 217, 223, fn. 2 [52 Cal.Rptr.2d 106, 914 P.2d 184].)

Usually implicated for an appellate opinion is the hearsay rule, which declares that evidence of a statement made other than by a witness while testifying is generally inadmissible to prove the truth of the matter stated (Evid. Code, § 1200). Such an opinion is manifestly not a statement by a witness. Exceptions are available (*id.*, §§ 1220-1370), notably for admissions (*id.*, § 1220) and former testimony (*id.*, §§ 1290-1294). It is the proponent who bears the burden of showing the applicability of at least one. (E.g., *People* v. *Livaditis* (1992) 2 Cal.4th 759, 778 [9 Cal.Rptr.2d 72, 831 P.2d 297].) The basic statement that the appellate opinion necessarily constitutes viz., the judgment of conviction is affirmed, modified, reversed, etc.— apparently comes within the official record exception (Evid. Code, § 1280). Any other statement that it may happen to contain must be shown to come within its own exception in order to avoid inadmissibility.

Always implicated for an appellate opinion, if somewhat less obviously and less strictly, is the best evidence rule, which declares that evidence other

than the original of a writing, i.e., secondary evidence, is generally inadmissible to prove the writing's content (Evid. Code, § 1500). Such an opinion is, as it were, "secondary evidence" of the content of a "writing" whose "original" is the record properly so called. That is because an appeal is generally confined thereto. (E.g., 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 328, p. 369.) Exceptions are available (Evid. Code, §§ 1501-1510), notably for writings that have been lost or destroyed without fraudulent intent (*id.*, § 1501) or that are not reasonably procurable (*id.*, § 1502). It is the proponent who bears the burden of showing the applicability of at least one. (See *Osswald* v. *Anderson* (1996) 49 Cal.App.4th 812, 819 [57 Cal.Rptr.2d 23].) Of course, an appellate opinion may be deemed "secondary evidence" of the record properly so called only if, and to the extent that, it is an accurate reflection thereof.

## III

I now turn to the case at bar, and specifically to the finding that defendant had previously been convicted in North Carolina of assault with a deadly weapon as a serious felony under the Three Strikes law.

In the superior court below, defendant did not object to the admission of the North Carolina appellate opinion on best evidence grounds. Because he did not, he has not preserved for review a claim based thereon. (E.g., *People* v. *Alvarez* (1996) 14 Cal.4th 155, 186 [58 Cal.Rptr.2d 385, 926 P.2d 365].)

Defendant, however, did indeed object to the admission of the North Carolina appellate opinion on hearsay grounds. The superior court impliedly overruled his objection, and received the opinion in evidence.

This was error. The North Carolina appellate opinion was plainly hearsay, inasmuch as it constituted and contained statements made other than by a witness offered for their truth—that defendant personally used a deadly weapon. The People did not even attempt to carry their burden of showing that the opinion itself or any of its parts came within any exception. They claimed to discern a "finding" by the North Carolina appellate court "that the defendant personally used the scissors . . . ."[2] None is evident. That is unsurprising. Like their California counterparts (see, e.g., 9 Witkin, Cal. Procedure, *supra*, Appeal, § 316, p. 354), North Carolina appellate courts generally do not make findings (see, e.g., *Matter of Montgomery* (1984) 311 N.C. 101, 111 [316 S.E.2d 246, 253]). Furthermore, to judge from the opinion, there was no finding, express or implied, by the North Carolina Superior Court to similar effect. There was merely the absence of a finding

[2]See footnote 1, *ante.*

that "defendant acted under strong provocation." To be sure, the opinion contains the statement by the unidentified inmate on defendant's personal use of a deadly weapon. But if that statement had itself been offered for its truth, it would have been inadmissible hearsay within inadmissible hearsay within inadmissible hearsay. The unidentified inmate evidently made the statement outside of court to a deputy sheriff, without subjecting himself to cross-examination and without providing indicia of reliability. In what was apparently an "unsworn statement" of his own,[3] the deputy sheriff, in turn, "summariz[ed]" the statement at the sentencing hearing, at which "[f]ormal rules of evidence [did] not apply" (N.C. Gen. Stat. § 15A-1334(b) (1997)), and at which defendant bore the burden of proof as to mitigation under a standard approaching that of beyond a reasonable doubt (*State* v. *Taylor* (1983) 309 N.C. 570, 576-577 [308 S.Ed.2d 302, 306-308]). The appellate court then simply paraphrased the statement in its opinion, supplying nothing that was lacking therein. If a probation officer had done the same in a report, the statement would unquestionably be held to be inadmissible hearsay. (See *People* v. *Reed, supra,* 13 Cal.4th at pp. 230-231.) Such must be the result here.

The majority resist this conclusion. Unsuccessfully.

At the outset, the majority assert that the issue that is material in cases of this sort is not the defendant's conduct, but rather the crime of which he was convicted, or perhaps better, the basis of his liability. Not so. It is indeed the defendant's conduct—here, whether or not defendant personally used a deadly weapon—that is of consequence. That is why his subsequent admission of what he did or did not do is sufficient in and of itself. (See *People* v. *Jackson* (1985) 37 Cal.3d 826, 833-837 [210 Cal.Rptr. 623, 694 P.2d 736].) In most instances, the crime of which the defendant was convicted can readily be established. So it is here—assault with a deadly weapon under North Carolina law. That is often not enough. As it is not enough here. A crime generally allows conviction on the basis of direct or vicarious liability. Again, so it is here. (*State* v. *Barnes* (1997) 345 N.C. 184, 230-233 [481 S.E.2d 44, 69-71.) At trial, the basis of liability usually need not be found by the trier of fact if liability itself is found. (See *People* v. *Santamaria* (1994) 8 Cal.4th 903, 922-923, fn. 10 [35 Cal.Rptr.2d 624, 884 P.2d 81] [applying California law, but speaking generally].) Similarly, on a plea of guilty, the basis of liability need not be admitted by the defendant—as apparently it was not admitted by defendant here.

The majority then assert that the North Carolina appellate opinion was not hearsay. But the opinion did, in fact, constitute and contain statements made

---

[3]Which, as such, is outside the former testimony exception. (Evid. Code, § 1290.)

other than by a witness offered for their truth—that defendant personally used a deadly weapon. The result would be no different if the opinion could be deemed to have been offered to prove the crime of which he was convicted or the basis of his liability. For it proves his crime and the basis of his liability only by proving his conduct. I recognize that an appellate opinion may be termed a "judicial statement." (Maj. opn., *ante*, at p. 459.) But a "judicial statement" is not admissible per se—and certainly not the opinion here, which largely recites inadmissible hearsay within inadmissible hearsay within inadmissible hearsay. Furthermore, the only "judicial statement" that comes within an exception as such, although only under certain limited circumstances, is a judgment (see Evid. Code, §§ 1300-1302) —which does not embrace the opinion here.

By erroneously receiving the North Carolina appellate opinion in evidence, the superior court subjected defendant to prejudice. Although the indictment, the guilty plea form, and the judgment allowed an inference that he personally used a deadly weapon, the opinion—and the opinion alone—practically compelled a finding to that effect. There is, accordingly, at least a reasonable probability that it affected the outcome to his detriment. (*People v. Watson* (1956) 46 Cal.2d 818, 836-837 [299 P.2d 243].)

## IV

For the reasons stated above, I would reverse the judgment of the Court of Appeal to the extent that it sustains the finding that defendant had previously been convicted in North Carolina of assault with a deadly weapon as a serious felony under the Three Strikes law, and would remand the cause to that court with directions to remand it to the superior court for proceedings not inconsistent with the views that I have expressed herein.

Kennard, J., concurred.

Appellant's petition for a rehearing was denied April 1, 1998, and the opinion was modified to read as printed above. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.