Filed 1/21/21  P. v. Jones CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>LAWRENCE JONES,<br><br>Defendant and Appellant. | B304219<br>(Los Angeles County<br>Super. Ct. No. BA337608) |

APPEAL from an order of the Superior Court of Los Angeles County, Eleanor J. Hunter, Judge.  Affirmed.

Randy S. Kravis, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Michael R. Johnsen, Supervising Deputy Attorney General, and Idan Ivri, Deputy Attorney General, for Plaintiff and Respondent.

This is the second time this case is before us.  On December 2, 2009, appellant Lawrence Jones was convicted of one count of first-degree murder and three counts of attempted murder.  At trial, the prosecution argued theories of premeditation and intentional aiding and abetting, as well as a theory of natural and probable consequences.  The jury found that the murder and attempted murders were committed with premeditation.  On appellant's appeal from the judgment of conviction, this court affirmed the judgment.  (*People v. Jones* (May 15, 2012, B226771) [nonpub. opn.] (*Jones I*).)

On June 27, 2019, appellant, through counsel, filed a petition for resentencing under section 1170.95 of the California Penal Code,[1] arguing that he was entitled to relief because the prosecution argued a theory of natural and probable consequences at trial.  The trial court ordered informal briefs from both parties.  After receiving responses from both parties, the trial court summarily denied appellant's petition for failure to set forth a prima facie basis for relief under section 1170.95.

Appellant now appeals, contending that the trial court erred in concluding that his petition failed to state a prima facie basis for relief, due to the possibility that the jury, in convicting appellant, might have misunderstood the instructions it received regarding premeditation. We disagree and affirm.

---

[1]     All further section references are to the Penal Code.

## FACTUAL BACKGROUND[2]

I.        *The Murder*

On July 30, 2007, Shantell Martinez was killed in a shooting on West View Street.  Martinez was a friend of Rokeshia Quinn, appellant's former girlfriend.  Appellant was a member of the Rollin' 60's Crips gang.  Quinn was a member of the Rimpau Boulevard Crips, a subset of the West Boulevard Crips.  At the time of the murder, there was no conflict between the Rollin' 60s and the West Boulevard Crips.

Quinn and appellant had argued violently earlier in the day, and appellant physically abused and threatened Quinn while driving her around Los Angeles in his Jaguar.  During a struggle with appellant in the car, Quinn damaged appellant's car radio.  Appellant stopped at a car stereo store to have the radio fixed, where Quinn called her friend Chardae Johnson.  Johnson's father and stepfather were "shotcallers" for the Rimpau Boulevard Crips, and Johnson considered herself a member of the West Boulevard Crips.  Johnson and Jaythia Muhammad, another friend of Quinn's, left in the latter's car to pick Quinn up, but were unable to find her.

Later, when appellant stopped at a Sprint Store to have his cell phone repaired, Quinn again called Johnson to come pick her up.  Johnson and Martinez, along with two other women, travelled to the Sprint Store in Martinez's car, where Johnson confronted appellant.  Following a physical and verbal altercation between appellant and

---

[2]        Our summary of the facts is based on our prior opinion.

3

Johnson at the Sprint Store, Quinn left with Johnson and the other women in Martinez's car.

They stopped at a gas station, where they met with Muhammad and another friend, Laniece Dalcour. Johnson called appellant and told him she intended to have someone fight him. After this, the women traveled to West View Street, where Johnson and Muhammad lived. Johnson attempted but failed to convince her cousin Chris to fight appellant. Johnson then called appellant again and told him to come to West View Street to fight someone.

In anticipation of the fight, a group of people gathered in the parking lot behind the apartment building where Johnson lived. Appellant eventually arrived at West View Street in his Jaguar. The various witnesses reported that two other vehicles, a Chevy Avalanche and a Ford SUV, arrived at the same time as appellant. Some witnesses reported that appellant was alone in his car, while others reported that two or three others exited the car with him. Some witnesses also reported that people exited the other two cars. In statements to the police, Johnson said she recognized two of these people as "BG," a friend of appellant's, and "Johnny," who had been in prison with her son's father. In other statements to the police, Quinn, Dalcour, and Adrian Wade, one of the people who had gathered to see the fight, said that the people who arrived with appellant were members of the Rollin' 60s.

After appellant exited the Jaguar, Muhammad approached him with a 13-inch aluminum baseball bat. Muhammad testified in court that she called appellant a "punk bitch," and appellant responded, "[o]n

4

6-0.  It's nothing.  I'll fight anybody."  She explained that "[o]n 6-0" was a challenge, referring to the Rollin' 60s; however, on cross-examination, she said his statement was "I'm 6-0, it's nothing," meaning he was not afraid to fight.

Muhammad swung her baseball bat at appellant, and they began to fight.  As many as eight or nine other women joined the fight to assist Muhammad.  In Johnson's statement to the police, she said that as appellant was being beaten, he called out, "[c]uz, on 60.  Y'all really gonna let these bitches jump me?  This is how West Boulevards get down."

The witnesses then heard gunshots.  Quinn and Johnson both reported that two unidentified gunmen had opened fire.  Jaime Garcia witnessed the event through the window of his friend's house on West View Street.  He saw two gunmen who left in appellant's Jaguar after the shooting.  Muhammad, Dalcour, and Wade were shot and injured, though all survived.  Martinez was shot in the head and died three hours after the shooting.

At trial, appellant disputed that he was a member of the Rollin' 60s, stating instead that he was only an associate of the gang, and never committed any crimes for their benefit.  The prosecution's criminal gang expert, Detective John Flores, stated his opinion, based on appellant's tattoos, social circle, and past admissions, that appellant was a member of the Rollin' 60s.  In response to a hypothetical question based on the facts of the case, he stated his opinion that the efforts of Quinn's friends to rescue her from appellant could be seen as disrespectful, such that a member of the Rollin' 60s would be expected

5

to retaliate. He also testified that it is common for gang members to call for back-up from other members when exacting such retaliation.

## DISCUSSION

I. *Petitions Under Section 1170.95*

By amending sections 188 (defining malice) and 189 (defining the degrees of murder), Senate Bill No. 1437 (S.B. 1437), effective January 1, 2019, changed "the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)[3]

In addition, S.B. 1437 added section 1170.95 (Stats. 2018, ch. 1015, § 4), which allows a person convicted of felony murder, or murder

---

[3] In amending section 188, S.B. 1437 added the following provision: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); Stats. 2018, ch. 1015, § 2.) S.B. 1437 also added the following as subdivision (e) of section 189: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2." (§ 189, subd. (e); Stats. 2018, ch. 1015, § 3.)

6

under the natural and probable consequences doctrine, to "file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:  [¶]  (1)  A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine.  [¶]  (2)  The petitioner was convicted of first degree or second degree murder following a trial . . . .  [¶]  (3)  The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189." (§ 1170.95, subd. (a).)

Subdivision (b)(1) of section 1170.95 requires that the petition be filed with the court that sentenced the petitioner, and must include (a) a declaration by the petitioner that he or she is eligible for relief under the section; (b) the superior court case number and year of conviction; and (c) whether the petitioner requests appointment of counsel. Subdivision (b)(2) provides that the trial court may deny the petition without prejudice if any of the information required by subdivision (b)(1) is missing and cannot be readily ascertained by the court. (§ 1170.95, subd. (b)(2).)

Subdivision (c) provides:  "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a

reply within 30 days after the prosecutor response is served. These deadlines shall be extended for good cause. If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

Appellate courts have interpreted subdivision (c) as providing for two stages of prima facie review. At the first stage, before receiving briefs from the parties, the trial court must evaluate whether "the petitioner falls within the provisions of this section," or whether petitioner is eligible for relief under section 1170.95 as a matter of law. At the second stage, after receiving briefs, the trial court must evaluate whether the petitioner makes a prima facie showing that he or she is entitled to relief. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, rev. granted, S260493, Mar. 18, 2020 (*Verdugo*); *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1140, rev. granted, S260598, Mar. 18, 2020; *People v. Tarkington* (2020) 49 Cal.App.5th 892, 897–898, rev. granted, S263219, Aug. 12, 2020.)

The remainder of the statute sets forth the procedure for responding to, and the hearing on, the order to show cause, as well as post-hearing matters.

II. *Summary Denial*

Appellant contends that the trial court erred in summarily denying his petition for failure to state a prima facie basis for relief. He argues that because the trial court received briefs from both parties, it implicitly concluded that appellant was eligible for relief as a matter of law at the first stage of prima facie review. He asserts that at the

8

second stage, a court must find that a petition states a prima facie case if the allegations therein would support a ruling in the petitioner's favor. (*Verdugo, supra,* 44 Cal.App.5th at p. 328.) Also, he asserts that the trial court was entitled only to rely on "readily ascertainable facts from the record." (*People v. Drayton* (2020) 47 Cal.App.5th 965, 980 (*Drayton*).) Appellant contends that in determining whether there was sufficient evidence to support a conviction under a theory of direct aiding and abetting theory, the trial court made an improper "factfinding" determination, rather than relying only on facts readily ascertainable from the record.

We disagree, and conclude that the trial court correctly determined that appellant was ineligible for relief as a matter of law. It relied on facts readily ascertainable from the record of conviction in making this determination.

At trial before appellant's conviction, the trial court instructed the jury using CALCRIM No. 520 on murder and CALCRIM No. 521 on premeditation, deliberation, and willfulness. CALCRIM No. 521 stated: "The defendant is guilty of first degree murder if the People have proved that he acted willfully, deliberately, and with premeditation." The instruction defined the terms "willfully," "deliberately," and "with premeditation" as follows: "The defendant acted willfully if he intended to kill. The defendant acted deliberately if he carefully weighed the considerations for and against his choice and, knowing the consequences, decided to kill. The defendant acted with premeditation if he decided to kill before committing the act that caused death."

9

The jury was also instructed with CALCRIM No. 403, on the natural and probable consequences doctrine, and CALCRIM No. 401, on direct aiding and abetting. CALCRIM No. 401 stated that someone aids and abets a crime if he or she knows the perpetrator's unlawful purpose and he or she intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.

Appellant argues that because the jury was instructed pursuant to CALCRIM No. 403, and because the prosecution discussed the natural and probable consequences doctrine at trial, he is eligible for relief under section 1170.95. However, at trial, the jury was also instructed on, and the prosecution also argued, theories of direct aiding and abetting and premeditated murder, and the jury convicted defendant of first degree premeditated murder. Despite this, appellant asserts that the record does not show that the jury convicted on a theory of direct aiding and abetting, or that the jury found he acted with premeditation. He asserts that the jury instructions delivered at trial, considered as a whole, are confusing, such that the jury could have construed the word "defendant" in CALCRIM No. 521 to apply to direct aider and abettor liability only, and convicted him of premeditated murder under a theory of natural and probable consequences because the shooters acted with premeditation, even if appellant did not.

However, as we explained in our opinion on appellant's direct appeal from the judgment of conviction, CALCRIM No. 521 defines the terms "willfully," "deliberately," and "with premeditation" only with reference to "the defendant." (*Jones I, supra*, at p. 14.) Therefore, this court concluded that "under the instructions, by convicting defendant of

10

first degree murder, and finding true the allegation that the attempted murders were willful, deliberate and premeditated, the jury necessarily concluded that defendant acted with the intent to kill, and with premeditation and deliberation." (*Ibid.*)

Appellant argues that because this court's opinion in *Jones I* decided a different legal issue than the one in this case, and because the trial court relied on the opinion to make a factual determination rather than a legal one, neither the doctrine of collateral estoppel nor the law of the case doctrine made that opinion binding on the trial court in this case. However, whether or not the trial court was bound by that opinion does not affect whether it was entitled to rely on that opinion in making its determination. In *Verdugo*, the court explained that "[a] court of appeal opinion, whether or not published, is part of the appellant's record of conviction. [Citations.] Accordingly, it was proper for the superior court to consider this court's opinion in *People v. Barraza* [(2008)] B194415, which affirmed Verdugo's convictions . . . in determining whether he had made a prima facie showing of eligibility for relief under section 1170.95 or whether he was ineligible for relief as a matter of law." (*Verdugo, supra,* 44 Cal.App.5th at p. 333, citing *People v. Woodell* (1998) 17 Cal.4th 448, 456.) Furthermore, in *Drayton,* the court explained that in proceedings under section 1170.95, trial courts may rely on facts readily ascertainable from the record of conviction, and that "if the record 'contain[s] facts refuting the allegations made in the petition . . . the court is justified in making a

11

credibility determination adverse to the petitioner.' [Citation.]" (*Drayton*, *supra*, 47 Cal.App.5th at p. 980.)

Appellant's argument that the trial court implicitly found him eligible for relief because it received briefs from the parties is also mistaken. The *Verdugo* court explained that a trial court may still make a determination as to whether a petitioner is eligible for relief under section 1170.95 even after its first prima facie review of a petition. "In response to the petition the prosecutor may be able to identify additional material from the record of conviction not accessible to, or reviewed by, the court during its first prima facie determination (for example, jury instructions) that establish the petitioner is not eligible for relief. In a reply the petitioner, represented by counsel, may rebut the prosecutor's claim of ineligibility." (*Verdugo*, *supra*, 44 Cal.App.5th at p. 330, fn. 9.)

In light of the *Verdugo* and *Drayton* courts' analyses, we conclude that it was not improper for the trial court in this case to determine, on the basis of appellant's conviction as stated in this court's earlier opinion, that appellant was ineligible for relief as a matter of law.

//

//

//

//

## DISPOSITION

The order is affirmed.[4]

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

WILLHITE, J.

We concur:

MANELLA, P. J.

COLLINS, J.

---

[4]     Appellant has filed a habeas corpus petition challenging the degree of his murder conviction, arguing that a conviction for first degree murder is made unlawful by the alleged uncertainty as to the jury's understanding of the instructions.  Given the resolution of this appeal, appellant's habeas corpus petition is denied.