[No. G015119. Fourth Dist., Div. Three. July 31, 1996.]

GARY OSSWALD, Plaintiff and Appellant, v.
LINDA ANDERSON, Defendant and Appellant.

## COUNSEL

Wallin & Klarich, Daniel P. Stevens and Fredrick M. Ray for Plaintiff and Appellant.

David S. White and John R. Winandy for Defendant and Appellant.

## OPINION

**WALLIN, J.**—Gary Osswald petitioned the court for a determination that a parcel of real property was subject to one of two irrevocable trusts created by his deceased mother and stepfather, Heidi and Otto Osswald, and naming him as the beneficiary. The trial court found the real property was not subject to either trust, found it was held by Heidi and Otto as tenants in

common at the time of Heidi's death, and awarded Gary one-fourth of the proceeds as his intestate share. Gary appeals, claiming the real property was the subject of at least one of the trusts, thus entitling him to all of the proceeds.

Linda Anderson was Otto's longtime business associate and paramour, and the mother of his son, Christopher, born shortly before Otto's death. Linda is the trustee of yet another trust, set up by Otto after Heidi's death for the benefit of Linda and Christopher, into which Otto placed the proceeds of the sale of the real property. Linda disputes Gary's contentions on appeal and cross-appeals, claiming primarily that title to the real property at the time of Heidi's death was held by Heidi and Otto as joint tenants, thus enabling Otto to make the subsequent transfer to her trust, free of Gary's intestate interest. We agree with Linda and reverse.

*Facts*

In 1987, Otto Osswald was approximately 60 years old, in poor health and besieged by litigation over his business ventures. He and his wife of many years, Heidi, consulted Attorney Mary Ellis about ways to protect their home from creditors and to preserve it for Heidi when Otto died. They discussed several options and settled on the device of an irrevocable trust. Although Ellis had drafted many revocable trusts, she had never prepared an irrevocable trust. Nevertheless, she drafted the Osswald Family Trust (the 1987 trust), naming Heidi and Otto as initial trustees and income beneficiaries. Linda Anderson was named as the successor trustee, and Gary Osswald was named as the residual beneficiary. The trust referred to schedule A as listing the trust property, but no schedule A was attached.

On July 8, 1987, Heidi and Otto signed the trust document. When shown a copy of a quitclaim deed transferring title to property in Huntington Beach from the Osswalds to themselves as trustees, Ellis testified it was prepared to transfer their home into the trust. She was asked, "[D]id . . . you prepare that document that you're looking at and did you then have the Osswalds sign it?" Ellis replied, "It appears to be—this is a copy. It appears to be the Osswalds' signatures from what I recall. And it was notarized by Evelyn St. Lawrence who was a secretary in our office. So I assume that that is correct." Although the deed was never recorded, Ellis's file contained a letter from her to the Osswalds stating that a copy of the quitclaim deed was enclosed and that she would have the deed recorded and send them a conformed copy. Ellis did not remember why the deed was not recorded.

Linda objected to the admission of the photocopy of the 1987 quitclaim deed on the grounds that it lacked foundation, was not properly authenticated

and violated the best evidence rule. She pointed out that the deed had not been in Ellis's file when it was produced at deposition, and Ellis confirmed that the holes punched in the copy were not consistent with her office procedure. Furthermore, the deed was not part of the list of exhibits in the joint pretrial conference statement prepared a few weeks before trial. Gary's counsel conceded that the copy submitted as an exhibit came out of his file, but was unable to explain where the original was. "The original is unavailable because—the original is unavailable in that I have never had access to the original. The only way I would have possibly gotten that document—my client sure didn't have it. How else would I have possibly received that document unless someone else in this room could explain other than receiving it from [Ellis]." The trial court admitted the photocopy.

After the 1987 trust was signed, Ellis became concerned that it would not protect the home from creditors after all, because the Osswalds were named as trustors, trustees and beneficiaries. In September 1988, she asked the Osswalds to come to her office to change the trust to comport with what she told them was a change in the law. She believed that they had the power to change the trust, despite its stated irrevocability, because they held the position of all three critical parties to the trust. Ellis advised the Osswalds that they needed to have a third party as trustee, and they decided on Gary. Ellis prepared a new trust, essentially the same as the 1987 trust, naming Gary as the initial trustee and Linda Anderson as the successor trustee (the 1988 trust). Schedule A was attached, listing the Osswalds' home and some personal property as the trust res.

Although Gary had not yet consented to be the trustee, the Osswalds signed the 1988 trust and another quitclaim deed on December 16, 1988. The deed contained the phrase, "Transfer to Irrevocable Trust"; it listed Otto and Heidi as grantors and erroneously listed "Otto A. Osswald and Heidi Osswald, Trustors of the Osswald Family Trust executed _____" as grantees. This deed was recorded on December 29, 1988.

Ellis believed the trust would not be valid until someone consented to be the trustee. Over the next several months, she had conversations with Gary, who had been sent copies of the trust documents, and tried to convince him to accept the position. Gary, however, "didn't like Otto. He made it quite clear that he didn't want anything to do with Otto or with anything that Otto owned. He made it very, very clear that he wanted to have nothing to do with the trust, that he did not want to be the trustee." Although Linda was named as the successor trustee, Otto indicated to Ellis that Linda was "not available" for the position, and Otto refused to allow Ellis to use either a corporate or court-appointed trustee.

Subsequently, Otto's lawsuits were resolved. Based on Ellis's advice that the trust was invalid for lack of a trustee, Otto and Heidi signed a quitclaim deed transferring title to the house from themselves "as Trustees of the Osswald Family Trust UTD 12/16/88" to Heidi as an individual. This deed was signed on April 30, 1990, and recorded on May 3, 1990. In February 1991, Heidi executed an interspousal transfer deed transferring title from herself to Otto and herself, husband and wife as joint tenants. This deed was recorded on February 27, 1991.

Also in February 1991, Linda discovered she was pregnant with Otto's child. Heidi died suddenly of a heart attack on September 17, 1991. The child, Christian, was born a few days later, on September 29. Otto asked Ellis to prepare a will specifically disinheriting Gary, which she did, but it was never executed.

In November 1991, Otto entered into a contract to sell his home. During escrow, he signed and filed an affidavit of death of joint tenant, which was recorded. Also in November, Otto consulted with Attorney Arnold Kahn about his estate plan. Otto told Kahn he was in poor health and needed the documents quickly, as he was planning to travel out of the country. Kahn prepared a revocable trust and a pourover will leaving substantially all Otto's assets to Linda and Christian (the 1991 trust). The will expressly excluded Gary from taking any part of Otto's estate. Otto signed these documents on December 9, 1991. Escrow on the home closed on December 21 and, under arrangements made by Otto, the proceeds were deposited directly into the 1991 trust. The next day, Otto died.

The trial court found as follows: (1) The Osswalds created an irrevocable trust in 1987 and funded it with the home. But this trust was revoked in 1988 when they were told they needed a new trust. The trial court stated, "When a husband and wife place their home in an irrevocable trust and they are trustors, trustees and beneficiaries and nothing is actually done except funding the trust, the husband and wife can revoke such a trust without court approval or knowledge. . . . If the trust is really used over time, this result would not necessarily apply." (2) The 1988 trust was never funded because the deed to Otto and Heidi as trustors of the Osswald Family Trust was ineffective, "essentially transferring the property to themselves." (3) The 1990 deed from Otto and Heidi as trustees of the 1988 trust to Heidi individually was ineffective to convey anything. (4) The interspousal transfer deed failed to convey any interest, because Heidi thought she was conveying the entire interest "and not her one-half interest she still held as former trustee of 1987 trust." (5) At the time of Heidi's death, Heidi and Otto held title as former trustees of the 1987 trust for the beneficial interest

of themselves. Because Heidi died intestate, her one-half interest passed half to Otto and half to Gary. (6) Otto successfully transferred his three-fourths interest in the home to the 1991 trust. The judgment awarded Gary one-fourth of the net proceeds of the sale of the home plus interest at market rate.

## Discussion

### ▮ Validity of the 1987 trust.

Gary agrees with the trial court's finding that a trust had been created, but attacks the finding Otto and Heidi validly terminated it. Linda claims the trust was never validly created because the evidence was insufficient to establish the trust was properly funded. We agree with Linda.

▮ The essential elements of a trust are: (1) trust intent, (2) trust property, (3) trust purpose, and (4) a beneficiary. (Prob. Code, §§ 15201-15205; *Chang* v. *Redding Bank of Commerce* (1994) 29 Cal.App.4th 673 [35 Cal.Rptr.2d 64].) ▮ The 1987 declaration of trust, signed by the Osswalds as trustors, clearly expressed their trust intent, purpose and beneficiaries; it purported to identify the trust property by referring to schedule A, but no schedule was attached. Although Ellis's testimony related the Osswalds' intent that their home was to be the trust property, the statute of frauds "forbids the creation of an express trust in real property by verbal declaration of the owner." (*Briggs* v. *Nilson* (1964) 226 Cal.App.2d 342, 345 [38 Cal.Rptr. 68].)

The applicable statute of frauds, Probate Code section 15206, provides that a trust in real property is not valid "unless evidenced . . . [¶] (a) [b]y a written instrument signed by the trustee . . . [or] [¶] (b) [b]y a written instrument conveying the trust property signed by the settlor . . . ." Because the declaration of trust did not identify the property, the photocopy of the 1987 quitclaim deed is the only writing evidencing the transfer.[1] But the copy cannot meet the requirements of the statute of frauds because, as we discuss below, it was admitted into evidence in violation of the best evidence rule.

▮ Evidence Code section 1500, California's best evidence rule, provides that only the original of a writing is admissible to prove its contents, unless a statutory exception applies. "The rule is designed to minimize the

---

[1]In *Estate of Heggstad* (1993) 16 Cal.App.4th 943 [20 Cal.Rptr.2d 433], the court held a separate deed transferring real property from the trustor to himself as trustee was not necessary to create a valid trust, where the trustor had signed the declaration of trust. But there, unlike the case before us, the declaration of trust contained a description of the real property.

possibility of misinterpreting writings. Since slight differences in written words or other symbols may make vast differences in meaning, the possibility for fraud and mistake in proof of the contents of a writing exists unless the writing itself is produced." (*People* v. *Bizieff* (1991) 226 Cal.App.3d 1689, 1696 [277 Cal.Rptr. 678].)

 Gary points out that a photocopy of an original document is admissible under several of the broad exceptions to the rule: Evidence Code section 1501 provides that a copy is not inadmissible if the writing is lost or destroyed without fraudulent intent; section 1502 provides a copy is not inadmissible if the writing could not be procured by the court's process "or other available means"; and section 1511 provides that "[a] duplicate is admissible to the same extent as an original unless (a) a genuine question is raised as to the authenticity of the original or (b) in the circumstances it would be unfair to admit the duplicate in lieu of the original." The circumstances here, however, are precisely those the rule was designed to protect against.

 Where a party contends a deed has been lost or is unavailable, he has the burden to prove a reasonable search has been made before secondary evidence of its contents can be introduced. (*Anthony* v. *Janssen* (1920) 183 Cal. 329, 332 [191 P 538]; *Cheek* v. *Whiston* (1958) 159 Cal.App.2d 472, 477 [323 P.2d 1028].) This requirement was reinforced in 1965 with the enactment of Evidence Code section 1502, which requires the proponent of the evidence to use the court's process or "other available means" to attempt to obtain the original writing. (See Cal. Law Revision Com. com., Deering's Ann. Evid. Code (1986 ed.) § 1502, p. 518.)[2] Gary presented no evidence of a search for the original deed, either at the recorder's office (where it was purportedly sent), or in the personal papers of Heidi or Otto.

Furthermore, Linda raised genuine questions regarding the authenticity of the original deed and the copy, thus invalidating the exception to the best evidence rule under Evidence Code section 1511. (*People* v. *Garcia* (1988) 201 Cal.App.3d 324, 329 [247 Cal.Rptr. 94].) It would be a simple matter to transfer the signatures and notary block to a different property description

---

[2]The Law Revision Commission explained, "The exception stated in Section 1502 is not stated in the existing statutes. However, writings not subject to production through use of the court's process have been treated as 'lost' writings, and secondary evidence has been admitted . . . . Because such writings have been treated as lost, the cases have admitted secondary evidence even when the original has been procurable by the proponent of the evidence by means other than the court's process. . . . Section 1502 changes the rule of these cases and makes secondary evidence inadmissible if the proponent has any reasonable means available to procure the writing . . . ." (7 Cal. Law Revision Com. Rep. (1965) p. 1, reprinted in Deering's Ann. Evid. Code, *supra*, § 1502, p. 518].)

and with a good photocopy machine create what appeared to be a copy of a valid deed. This is more than idle speculation when considered with the facts that the copy of the deed was not in Ellis's file, where it logically should have been, and neither Ellis nor Gary could explain why it was not. Gary's counsel did not know where he got the copy, and he did not produce it until a few days before trial. Gary did not carry his burden of showing the authenticity of the copy of the deed, "including the absence of any material alteration." (*People* v. *Morris* (1991) 53 Cal.3d 152, 205 [279 Cal.Rptr. 720, 807 P.2d 949].)

*Validity of the 1988 trust.*

Gary claims if we find the 1987 trust invalid, we must find the 1988 trust was properly funded and never revoked, thus controlling the current disposition of the property. But the 1988 trust suffers from the same infirmity as the 1987 trust: there is no writing evidencing a trust in the real property as required by Probate Code section 15206.

The 1988 trust document adequately described the real property, unlike the 1987 document, but it named Gary and Linda as trustee and successor trustee, respectively, not Heidi and Otto. So the Osswalds' signatures on the trust document were not sufficient to satisfy the statute. *Estate of Heggstad, supra,* 16 Cal.App.4th 943 is again distinguishable. *Heggstad* held a declaration of trust signed by the trustor was sufficient to establish a trust in real property where the trustor declared *himself* as trustee. (*Id.* at pp. 947-951.) And the 1988 quitclaim deed, which was signed and recorded, was ineffective to transfer title to the trust, as the grantees were Heidi and Otto as trustors.[3]

*Validity of the subsequent transfers.*

The 1990 quitclaim deed from Otto and Heidi as trustees of the 1988 trust to Heidi as an individual was ineffective because Otto and Heidi did not hold title as trustees. A quitclaim deed transfers only whatever interest the grantors possess at the time of the conveyance. (*In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 496 [257 Cal.Rptr. 397]; 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 135, p. 351.) Accordingly, Heidi's attempt to make an interspousal transfer to herself and Otto as joint tenants was likewise ineffective.

■ If a transfer to a trust is invalid, the legal title to the property remains in the grantor. ■ Because neither the 1987 trust nor the 1988 trust was

---

[3]The trial court commented, "One could understand a typo of OR rather than EE, but not the name of the trustee. The net effect is that the deed is ineffective, essentially transferring the property to themselves."

validly formed, title to the property is as it was before the attempted transfer to the 1987 trust. (*Booge* v. *Reinicke* (1941) 45 Cal.App.2d 260, 265 [114 P.2d 427].)[4] Linda's trial exhibit F shows title to the condominium was granted in February 1987 to "Otto A. Osswald and Heidi Osswald, husband and wife as joint tenants." There is no evidence that the title changed between February and July of 1987 (the date of the attempted transfer to the 1987 trust), nor does Gary contend otherwise. Accordingly, Heidi's one-half interest passed to Otto as the surviving joint tenant on Heidi's death, and he had the power to sell the home and cause the entire proceeds to be transferred into the 1991 revocable trust for Linda and Christian.

The judgment is reversed. Each party is to bear his or her own costs of appeal.

Crosby, Acting P. J., and Rylaarsdam, J., concurred.

A petition for a rehearing was denied August 28, 1996.

---

[4]In light of holding that the 1987 trust was never validly created, the trial court's finding that Otto and Heidi held title as former trustees of the 1987 trust was erroneous.