T.C. Memo. 1998-269


UNITED STATES TAX COURT


MICHAEL A. AND KARYN E. SCHMITT, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22670-95.              Filed July 23, 1998.


Lawrence M. Lebowsky, for petitioners.

Michelle Or, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, Judge:  Respondent determined deficiencies in petitioners' Federal income tax in 1990 and 1991 of $24,808 and $11,800.71, respectively.  The petition in this case seeks a redetermination only of the deficiency for 1991.

The issue for our consideration is whether petitioners had unreported Schedule C income in taxable year 1991.

FINDINGS OF FACT[1]

At the time the petition was filed, petitioners resided in Woodland Hills, California.  Petitioners are cash basis taxpayers.  Michael A. Schmitt (petitioner) is a law professor at Southwestern University School of Law in Los Angeles, California, and is licensed to practice law in the State of California.  From 1984 through the time of trial, petitioner operated a sole proprietorship under the name Legal Education Conference Center (LECC).

LECC offered a full-service bar review course and supplemental workshops to law school graduates who were preparing to take the California bar examination.  The full service bar review course covered substantive areas of law tested on the California bar examination, including both the National multistate law and California State law components of the bar examination.  LECC also offered three supplemental workshops that each focused on a specific area of testing on the California bar examination:  Essay writing, performance skills, and the multistate law component.  The bar review course and workshops were offered twice a year coinciding with the testing times for the California bar examination, which is given in February and July of each year.  LECC also offered a preliminary bar review

_____

[1] The stipulation of facts and the attached exhibits are incorporated herein by this reference.

course for third-year law students who were planning to take the bar examination after graduation. Petitioner was an instructor for the bar review courses.

LECC's bar review course was offered on either a guaranteed or nonguaranteed basis. Under the guaranteed program, students were entitled to a full refund of their tuition if they failed the bar examination. The same course material and instruction were provided for the guaranteed and nonguaranteed review courses. However, students in the nonguaranteed course were not eligible to receive a refund of any portion of their tuition if they failed the bar examination. Also, the tuition for the guaranteed course (guaranteed tuition) was higher than the tuition for the nonguaranteed course. The supplemental workshops were offered only on a guaranteed basis. Students enrolled in the guaranteed bar review course could attend the supplemental workshops without paying an additional charge. Alternatively, students could enroll in a workshop without enrolling in the bar review course. Class sizes for the bar review course and supplemental workshops were limited.

The cost of the guaranteed bar review course and guaranteed supplemental workshops included a registration fee and tuition. The registration fee for the guaranteed course and workshops was nonrefundable. The costs of the nonguaranteed and guaranteed review courses and the guaranteed workshops were as follows:

| Course | Registration Fee | Tuition | Total |
|---|---|---|---|
| Nonguaranteed review course | --- | --- | $1,075 |
| Guaranteed bar review | $490 | $1,000 | 1,490 |
| Guaranteed performance skills | 250 | 500 | 750 |
| Guaranteed essay writing | 250 | 500 | 750 |
| Guaranteed multistate | 175 | 300 | 475 |

The record in this case does not indicate whether the cost of the nonguaranteed course comprised a registration fee and tuition or the amounts thereof.

The registration fee and tuition had to be paid in full before the first day of review classes. The course for the February examination (winter course) began in the preceding January, and the course for the July examination (summer course) began in June. Accordingly, students who were enrolled in the winter 1992 bar review course paid their tuition in December 1991. There were 38 students enrolled in LECC's winter 1992 guaranteed course. The guaranteed tuition from the winter 1992 course was approximately $30,000 and was subject to a refund in 1992 to any student who failed the February 1992 bar examination.

LECC promised to pay the tuition refunds to guaranteed students who failed the bar examination within 2 weeks of the release of the results. Petitioner has given certain guaranteed students the option of reenrolling in LECC's bar review course free of charge instead of obtaining a tuition refund. Petitioner had discretion over whether to permit a student to reenroll in an LECC course after failing the bar examination. If he thought

that a failing student had not made an effort to pass the bar examination during the previous review course, he would not permit that student to reenroll.  Additionally, LECC's brochure stated that a failing student had to have received a score of at least 1,400 on the prior bar examination to reenroll in the guaranteed course.  According to the brochure, students who had less than a 1,400 score on the previous bar examination could reenroll in the nonguaranteed course.  When a failing student (who had not obtained a tuition refund) reenrolled in an LECC course, petitioner provided additional materials and services to the student without additional compensation from the student.  Also, because the LECC class sizes were limited, a repeating student reduced petitioner's ability to generate revenue from the LECC courses.

LECC had a checking account at Sanwa Bank (Sanwa account).  During 1991, petitioner deposited the registration fees and the tuition from both the guaranteed and nonguaranteed bar review courses and the supplemental workshops into the Sanwa account.  During 1991, petitioner deposited $265,273 into the Sanwa account.  Petitioner's deposits into the Sanwa account included the $30,000 tuition from the winter 1992 guaranteed review course.[2]  During 1991, petitioner also paid refunds from the Sanwa account to guaranteed students who failed the bar

---

[2] Amounts are rounded to the nearest dollar.

examination. In that year, petitioner paid refunds of $46,165 from the Sanwa account. Overall, petitioner withdrew $257,129 from the Sanwa account during 1991.

Petitioner also had a term savings account at World Savings and Loan Association (World Savings). He opened the account on July 23, 1990, with a $50,000 deposit. The savings account was in petitioner's name and was not designated a trust account. After making the initial $50,000 deposit in 1990, petitioner did not deposit any additional money into the World Savings account. In particular, he did not deposit any of the tuition from the summer 1991 or winter 1992 guaranteed review courses into the account. Petitioner deposited the tuition paid during 1991 into the Sanwa account and did not transfer any money between the two accounts.

Petitioner maintained the account at World Savings until 1994. Throughout the term of the account, petitioner never made any withdrawals from it. He did not pay any refunds to guaranteed students who failed the bar examination from the World Savings account. Nor did petitioner withdraw money from the account when guaranteed students passed the bar examination. Petitioner allowed the interest earned on the account to accumulate and did not pay the interest over to the guaranteed students. Petitioners reported the interest income from the account on their 1991 tax returns.

Respondent computed petitioners' 1991 Schedule C gross receipts from LECC using the bank deposits method on the basis of deposits into the Sanwa account during 1991 and determined that petitioners underreported their gross receipts by $83,166. Respondent allowed petitioners a deduction for the $46,165 in refunds that were paid to failing students during 1991, which petitioners had not claimed on their 1991 tax return. Accordingly, respondent determined that petitioners had unreported Schedule C net income of $37,001 in 1991.

                              OPINION

Respondent determined that petitioners had unreported Schedule C net income for 1991 in the amount of $37,001 from bar review courses that petitioner offered through LECC. Petitioners have the burden of showing that they did not have income in the amount determined by respondent. Rule 142(a).[3] Petitioners have conceded that they underreported their Schedule C net income by $1,000. Petitioners have not offered any explanation for $6,001 in unreported net income determined by respondent. Accordingly, we find that petitioners have unreported their taxable income in these amounts.

---

[3] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

With respect to the remaining $30,000 in unreported net income determined by respondent, petitioners contend that they were not required to report $30,000 of tuition from LECC's winter 1992 guaranteed review course that was deposited into the Sanwa account during 1991. The guaranteed students paid the tuition in 1991, and the tuition was refundable to students in 1992 if they failed the bar examination. Petitioner contends that there were substantial restrictions on his receipt of the tuition during 1991 because (1) he was required by the LECC contract with the guaranteed students to place the $30,000 tuition into a set-aside escrow account until the students passed the bar; and, (2) pursuant to the contract, he established a trust account at World Savings for deposit of the refundable tuition. In this regard, petitioner argues that the guaranteed tuition should not be reported as income until the guaranteed students passed the bar examination.

Petitioner, however, failed to establish a trust, either in form or in substance, for the guaranteed tuition. Petitioner deposited $50,000 into a savings account at World Savings; however, he was not required to do so by LECC's guaranty agreement with the students. Rather, petitioner personally chose to put money in the World Savings account and could have decided to withdraw and spend the money at any time without restriction or recourse from the guaranteed students. Petitioner's failure

to properly structure a trust for the receipt of the tuition payments is especially difficult to excuse because he is an attorney and law professor and taught trust law for the LECC review courses. Petitioner's arguments, which are addressed below, that he was contractually obligated to create an escrow/trust and, in fact, created a trust with the guaranteed tuition are without merit.

Taxpayers who use the cash method of accounting, such as petitioners in this case, must report income when it is actually or constructively received. Sec. 451(a); sec. 1.451-1(a), Income Tax Regs. Income is constructively received by a taxpayer when it is "credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time". Sec. 1.451-2(a), Income Tax Regs. Where the taxpayer's control of the receipt of income is subject to substantial limitations or restrictions, the income is not constructively received by the taxpayer. Sec. 1.451-2(a), Income Tax Regs. The doctrine of constructive receipt requires taxation of income that is subject to a taxpayer's unfettered command and that the taxpayer is free to enjoy at his own option even though he chooses not to. Corliss v. Bowers, 281 U.S. 376, 378 (1930). Petitioners have the burden of establishing that they did not have actual or constructive receipt of the $30,000 in tuition from the winter 1992 guaranteed course. Rule 142(a).

Petitioner has argued that the LECC agreement with the guaranteed students required that the guaranteed tuition be placed into a set-aside escrow account. However, there is no credible evidence that the agreement between petitioner and the guaranteed students required petitioner to create an escrow or trust arrangement. There was no written escrow agreement between petitioner and the guaranteed students. The only reliable evidence of the terms of the guaranteed review course is the LECC brochure. The LECC brochure contains the statement that petitioner will refund tuition to students enrolled on the guaranteed basis if they fail the bar examination. There is nothing in the brochure that indicates in any way that petitioner intended to place the tuition into an escrow or trust account or would not use the tuition before the students passed the bar examination. We hold that petitioner was not required by his agreement with the guaranteed students to establish an escrow or trust account to hold the tuition payments. There was no contractual restriction on petitioner's use of the $30,000 tuition during 1991, and any restriction on petitioner's use of the tuition was imposed by petitioner himself.

Petitioner contends that he created an oral trust to hold the guaranteed tuition until the students took the bar examination. Under California law, an express trust in personal property may be made by an oral declaration of trust. Cal. Prob.

Code sec. 15207 (West 1991). A trust may be created by a declaration by the owner of property, by the transfer of property to a third person as trustee, or by an enforceable promise to create a trust. Cal. Prob. Code sec. 15200 (West 1991). The essential elements of a trust under California law are: (1) A manifestation of an intention by the settlor to create a trust; (2) trust property; (3) a lawful purpose for the trust; and (4) an identified beneficiary. Cal. Prob. Code secs. 15200-15205 (West 1991); Osswald v. Anderson, 49 Cal. App. 4th 812, 818, 57 Cal. Rptr. 2d 23, 26 (1996). The creation of a trust is not determinative of whether or not petitioner had constructive receipt of the guaranteed tuition when paid by the students. A cash basis taxpayer has constructive receipt of funds paid into an escrow or trust account upon deposit unless the taxpayer's control over the money in the account is subject to substantial limitations or restrictions. Stiles v. Commissioner, 69 T.C. 558, 563 (1978); sec. 1.451-2, Income Tax Regs.

Petitioner did not establish a trust account with the $30,000 guaranteed tuition. Petitioner contends that he created a trust account at World Savings and that he held the tuition in that account until the students passed the bar examination. The World Savings account was in petitioner's name and was not designated as a trust account. No deposits were made to that account after 1990. Petitioner never deposited the tuition from

the winter 1992 course into the account at World Savings. Rather, he deposited the $30,000 into the Sanwa account and did not transfer any money from Sanwa to World Savings. Consequently, the $30,000 tuition from the winter 1992 guaranteed course was not held in trust in the World Savings account. Petitioner also continued to pay refunds to failing students from the Sanwa account during 1990 and 1991. He did not withdraw money from the account when students passed the bar examination and, under his argument, he would have been entitled to the tuition. In fact, petitioner did not make any withdrawals from the World Savings account until 1994. Petitioner's actions in connection with the World Savings account and his treatment of the tuition are entirely inconsistent with his claim that he held the tuition payments in trust at World Savings. He did not place the $30,000 of guaranteed tuition in an escrow or trust account. Rather, he placed all of the tuition into the Sanwa account and spent the tuition to pay operating expenses of the review courses. We hold that petitioner had actual receipt of the money upon deposit. Accordingly, petitioner must report the tuition as income in 1991.

Petitioner contends that before 1990, he reported the tuition from the guaranteed course as Schedule C gross receipts in the year the tuition was paid by the students. Petitioner maintains that in 1990, he opened a trust account at World

Savings for the purpose of deferring the reporting of the guaranteed tuition as income until the students passed the bar. He contends that he deposited $50,000 of refundable tuition from the guaranteed course offered during 1990 into the World Savings account to be held in trust for the guaranteed students until they took the bar examination. Petitioner has attempted to explain his failure to deposit the purported trust property, i.e., the $30,000 in tuition from the winter 1992 guaranteed course, into the alleged trust account. He contends that because he had previously deposited $50,000 into the World Savings account and did not withdraw the money to pay refunds to failing students in the previous year, there was sufficient money in the account to cover tuition refunds for the winter 1992 courses. Petitioner argues that it was unnecessary for him to deposit the $30,000 in tuition from the winter 1992 guaranteed course into the alleged trust account.

There was some confusion at trial as to which parties, petitioner or the guaranteed students, were the settlors and beneficiaries of the alleged trust. Petitioner argues that both he and the guaranteed students are the settlors. Under California law, a trust is created only if the settlor manifests an intention to create a trust. Cal. Prob. Code sec. 15201. Petitioner contends that he intended to create a trust. Petitioner's intention, as the trustee or a beneficiary (if the

students passed the bar examination) of the trust, to establish a trust is irrelevant.  Petitioner's position that he was the settlor of the purported trust presupposes that he was the owner of the trust property at the time of the declaration of trust, because only an owner of property is able to declare an intent to hold that property in trust.  See Cal. Prob. Code sec. 15200(a).

It has not been shown that the guaranteed students were the settlors of the trust and transferred the tuition payments with the intention that the tuition would be held in trust until the bar examination results were announced.  Petitioner has not presented any evidence that the guaranteed students intended to create a trust or escrow for future payment of the $30,000 tuition to petitioner if they passed the bar examination.  The guaranteed students paid the tuition for the LECC course during 1991.  There has been no showing of an intention to restrict petitioner's use of the tuition money until the students passed the bar examination.  Rather, the students expected that petitioner would refund the money if they failed.

Finally, we note that we are not certain that the $50,000 deposited into the World Savings account was tuition held in trust for an LECC course offered during 1990.  Petitioner contends that he withdrew $50,000 of tuition payments from the Sanwa account and deposited the money into the alleged trust account at World Savings.  That testimony is not supported by

evidence in the record, such as a check issued on Sanwa or a bank statement from the Sanwa account, that shows that petitioner withdrew $50,000 from Sanwa. Petitioner produced bank statements from the Sanwa account for only the months of May, June, and December 1990. The deposit was made on July 23, 1990, and did not coincide with the payment of tuition by guaranteed students during that year. Tuition for the summer 1991 course was generally paid in May 1990. Petitioner has not explained his delay in establishing the alleged trust account. The logical conclusion is that petitioner used his own money to open the World Savings account rather than refundable tuition from the LECC's 1990 review courses, as he contends.

There is no documentary support of petitioner's or the guaranteed students' alleged intent to create a trust account or escrow arrangement. Petitioner failed to deposit the tuition into the World Savings account; petitioner's oral testimony that he intended to create a trust is not credible. Petitioner's right to retain the tuition from the guaranteed courses was in some respects contingent on the students' performance on the California bar examination. However, the possibility that petitioner might have had to pay failing students refunds is not a substantial restriction on his use of the tuition. The World Savings account was not a trust account that created a

substantial restriction on petitioner's use and control of the tuition payments.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>