Filed 3/16/15

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA



| | |
|---|---|
| DANIEL UKKESTAD, as Co-trustee etc., | D065630 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2013-00062564-PR-TR-CTL) |
| RBS ASSET FINANCE, INC., | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Julia C. Kelety, Judge. Reversed and remanded with directions.


Niddrie Fish & Addams, David A. Niddrie and John S. Addams for Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Daniel Ukkestad, who is a co-trustee of the Larry Gene Mabee Revocable Trust (the Trust), appeals from the probate court's order denying his petition to confirm that two parcels of real property are part of the Trust's assets. We conclude that the probate

court erred in denying the petition, and we accordingly reverse the probate court's order and remand with directions that the probate court enter an order granting the petition.

I

FACTUAL AND PROCEDURAL BACKGROUND

Larry Gene Mabee, who died on December 16, 2012, executed a First Amendment and Complete Restatement of the Trust on December 7, 2012 (the Trust Instrument), appointing himself as the trustee. On that same date, Mabee also executed a will, which contains a pour-over provision giving the residue of the estate to the trustees of the Trust.

Mabee owned two parcels of real estate that are the subject of this appeal: (1) a parcel at 1025 East Bobier Drive, in Vista, California; and (2) a parcel known as 80501 Avenue 48, Space 114, in Indio, California (collectively, the Two Parcels). According to the grant deeds, title to the Two Parcels was held by Mabee as an individual.

The Trust Instrument does not describe the Two Parcels by reference to any specific identifying information unique to those properties, such as the address or legal description of the Two Parcels. Although not specifically identifying the Two Parcels, the Trust Instrument generally states that Mabee assigns the ownership of all of his real property to the trustees of the Trust effective immediately. The Trust Instrument states:

> "The Grantor [i.e., Mabee], by the execution of this instrument, hereby assigns, grants and conveys to the Trustees of this instrument all of the Grantor's right, title and interest in and to all of his real and personal property, including all Tangible Personal Property, stocks, bonds, cash, mutual funds and promissory notes, all amounts on deposit from time to time at any bank, savings and loan association or investment institution, real property, leases on real property, interests in business entities and all other property owned by the Grantor, wherever situated. . . . The Grantor intends this assignment to be effective as of the date of this instrument even

2

though other documents may be necessary to perfect title to such property in the name of the Trustees."

Ukkestad, with the express agreement of the two other trustees of the Trust (Mabee's wife and one adult child), filed a petition under Probate Code section 850, subdivision (a)(3) for an order confirming that the Two Parcels are part of the Trust's assets, premised on the above-quoted language from the Trust Instrument. Real estate title documents lodged by Ukkestad in the probate court, along with a declaration by counsel, established that Mabee was the owner of the Two Parcels.[1]

A potential creditor of the estate, RBS Asset Finance, Inc. (RBS), filed a creditor's claim against the estate and also filed a response and opposition to the petition for an order confirming trust assets.[2] RBS argued that the language in the Trust Instrument conveying all of Mabee's real property to the trustee was not legally sufficient to make the Two Parcels part of the Trust's assets.[3]

On January 14, 2014, the probate court denied with prejudice Ukkestad's petition for an order confirming trust assets. The hearing on the petition was not reported, but a settled statement approved by the probate court explained that the court had ruled that the

---

[1]     The documents lodged by Ukkestad consist of recorded grant deeds for the Two Parcels and chain of title guarantees for the Two Parcels issued by a title company.

[2]     Mabee had personally guaranteed a $4.3 million promissory note payable to RBS related to the financing of an aircraft, and RBS was apparently interested in having the Two Parcels available as part of Mabee's estate in the event RBS had to collect on the personal guarantee.

[3]     RBS did not dispute that, as shown by the documents submitted by Ukkestad, Mabee held title to the Two Parcels.

3

Trust was valid and had become irrevocable, but that the Two Parcels were not assets of the Trust, as the Trust Agreement did not satisfy the statute of frauds with respect to the Two Parcels.

Ukkestad appeals from the order denying the petition. RBS and Ukkestad have resolved the dispute giving rise to RBS's potential creditor's claim, and RBS has therefore withdrawn its opposition to the petition and has not filed a respondent's brief.[4]

II

DISCUSSION

It is well established that if two specific requirements are met, real property may be made part of a trust's assets without a separate deed transferring property to the trust. (*Estate of Heggstad* (1993) 16 Cal.App.4th 943, 947-950 (*Heggstad*).)

The first requirement is that the owner of real property is the settlor creating the trust with himself or herself as the trustee. (*Heggstad*, *supra*, 16 Cal.App.4th at pp. 947-950; see also Prob. Code, § 15200, subd. (a) [stating that one way of creating a trust is "[a] declaration by the owner of property that the owner holds the property as trustee"].) That requirement is unquestionably satisfied here with respect to the Two Parcels because — as shown by the undisputed documents lodged by Ukkestad in the probate court in support of his petition — Mabee was the owner of the Two Parcels, and the Trust Instrument states that Mabee will hold all of his real property as trustee of the Trust.

---

4    The issue of whether the Two Parcels are outside of the Trust is not moot because it has tax consequences and is relevant to any future creditor claims against the estate.

Second, because a conveyance of real property is at issue, the other requirement for transferring real property to a trust is compliance with the statute of frauds. (*Heggstad*, *supra*, 16 Cal.App.4th at p. 948 ["Where the trust property is real estate, the statute of frauds requires that the declaration of trust must be in writing signed by the trustee."].)  Specifically, the statute of frauds in Probate Code section 15206 states:  "A trust in relation to real property is not valid unless evidenced . . . :  [¶]  (a) By a written instrument signed by the trustee . . . .  [¶]  (b) By a written instrument conveying the trust property signed by the settlor . . . .  [¶]  (c) By operation of law."  Accordingly, under the statute of frauds, "a *written* declaration of trust by the owner of real property, in which he names himself trustee, is sufficient to create a trust in that property."  (*Heggstad*, at p. 950, italics added.)  The issue in dispute here is whether Mabee's statement in the Trust Instrument that he is conveying "all of his real and personal property" to the trustee, including "real property . . . wherever situated," is sufficient to comply with the statute of frauds and therefore legally convey the Two Parcels to the Trust.

We apply a de novo standard of review in determining whether the statute of frauds has been satisfied to make the Two Parcels as part of the Trust's assets.  (See *Kucker v. Kucker* (2011) 192 Cal.App.4th 90, 93 (*Kucker*) [applying de novo standard of review on undisputed facts to the issue of whether the Civil Code's statute of frauds was satisfied in conveying certain personal property to a trust]; *Sterling v. Taylor* (2007) 40 Cal.4th 757, 772 (*Sterling*) ["it is a question of law whether a memorandum, considered in light of the circumstances surrounding its making, complies with the statute of frauds"].)

5

Most of the case law on the issue of whether a description of real property is specific enough to satisfy the statute of frauds has developed in contexts other than probate actions involving trusts or wills.  The case by our Supreme Court that sets forth the applicable rule is *Beverage v. Canton Pacer Mining Co.* (1955) 43 Cal.2d 769 (*Beverage*).  *Beverage* arose in the context of a contract of sale in which the real property at issue could not be identified based solely on information in the contract.  As *Beverage* explained, "[t]o satisfy the statute of frauds, the memorandum affecting the sale of real property must so describe the land that it can be identified with reasonable certainty. . . .  Preferably, the writing should disclose a description which is itself definite and certain.  Alternatively, however, a description fulfills the test of reasonable certainty if it furnishes *the 'means or key'* by which the description may be made certain and identified with its location on the ground."  (*Id*. at p. 774, citations omitted and italics added.) [5]

In the context of a case arising from a dispute over the certainty of the terms of sale of real property, our Supreme Court recently endorsed a "flexible, pragmatic view," under which uncertain written contractual terms comply with the statute of frauds as long as they can be made certain by reference to extrinsic evidence, and as long as that evidence is not used to *contradict* the written terms.  (*Sterling*, *supra*, 40 Cal.4th at p.

---

[5]     The description read "seven and one-half (7 1/2) acres, more or less, to south of State Highway at Chambers Creek, (between highway Engineer Stations 561 + 58.51 +/- to 577 +/-) being part of Canton Placer Claim."  (*Beverage*, *supra*, 43 Cal.2d at p. 773.) *Beverage* held that the description provided a " 'means or key' " which, together with extrinsic evidence, might sufficiently identify the real property to satisfy the statute of frauds.  (*Id*. at pp. 774, 775.)

6

771, fn. 13.) Under the operative law, as recently clarified in *Sterling*, "[t]he governing principle is: 'That is certain which can be made certain.' . . . [I]f a memorandum includes the essential terms of the parties' agreement, but the meaning of those terms is unclear, the memorandum is sufficient under the statute of frauds if extrinsic evidence clarifies the terms with reasonable certainty and the evidence as a whole demonstrates that the parties intended to be bound." (*Ibid*., citations omitted.)[6]

An instructive case that demonstrates the applicable rule is *Alameda Belt Line v. City of Alameda* (2003) 113 Cal.App.4th 15 (*Alameda*). In *Alameda*, the court decided that language in a 1924 option to repurchase railroad property complied with the statute of frauds despite uncertain language describing the applicable real property. Although the option agreement vaguely referred to the real property as the "belt line railroad including all extensions thereof" (*id*. at p. 19), the court held that the language was

_____

[6]    The rule expressed in *Sterling* and in *Beverage* is consistent with our Supreme Court's long-standing view that a general assignment of a party's real and personal property in a written instrument is sufficiently certain to be legally effective. For example, our Supreme Court concluded in *Brusseau v. Hill* (1927) 201 Cal. 225 (*Brusseau*) that the written statement " 'This is my gift of deed all is in my possession to Mr. G. W. Brusseau . . .' " adequately described the real property at issue. (*Id*. at p. 230.) As *Brusseau* explained, " '[u]sually general descriptions, such as "all the estate both real and personal of the grantor," "all my land" in a certain town, county or state, "and my land wherever situated," "all my right, title and interest in and to my father's estate at law," and the like, are held good. And a deed is not void merely because it conveys all one's property in general terms.' " (*Id*. at p. 231; see also *Pettigrew v. Dobbelaar* (1883) 63 Cal. 396 (*Pettigrew*) [a deed identifying " 'all lands and real estate belonging to the said party of the first part, wherever the same may be situated' " sufficiently described the properties at issue]; *Bumb v. Bennett* (1958) 51 Cal.2d 294, 302 (*Bumb*) [a deed of assignment transferring " 'all of the property of the Assignor of every kind and nature and wheresoever situated, both real and personal or mixed, and any interest or equity therein not exempt from execution' " was legally sufficient to convey real property].)

sufficiently certain to satisfy the statute of frauds because the parties could consult extrinsic evidence, in the form of legal documentation of the original railroad property and of all of the subsequently acquired property for the extensions, to make the description of the real property more certain.  (*Id*. at pp. 22-23.)  Relying on the approach established in *Beverage*, *supra*, 43 Cal.2d at page 774, *Alameda* explained that the contractual language was a "sufficient 'means or key' by which extrinsic or parol evidence could be used to define the property which is the subject of the option."  (*Id*. at p. 22.)

In contrast, the type of case in which a description of real property was *not* sufficient to satisfy the statute of frauds is illustrated in *Osswald v. Anderson* (1996) 49 Cal.App.4th 812, 818 (*Osswald*).  In *Osswald*, the trustors signed a declaration of trust, apparently intending to make their home an asset of the trust.  The trust document failed to adequately describe the home or any other real property as being part of the trust assets, as the trust document purported to identify the trust property by referring to an attached schedule A, but then neglected to attach any schedule A.  Under those circumstances, as *no property whatsoever* was described in the trust document, there was no writing identifying the trustors' real property that could be made more certain by reference to extrinsic evidence.  (*Ibid*.)

In this case, unlike in *Osswald*, the Trust Instrument contains language that identifies which of Mabee's real property is being conveyed to the trust.  Specifically, in the Trust Instrument, Mabee refers to "*all* of his real and personal property, including . . . real property . . . , wherever situated."  (Italics added.)  Further, as in *Beverage* and

8

*Alameda*, the language of the Trust Instrument provides a "sufficient 'means or key' by which extrinsic or parol evidence could be used to define the property" that is part of the Trust's assets.  (*Alameda*, *supra*, 113 Cal.App.4th at p. 22.)  As is shown by the declaration of Ukkestad's counsel in the probate court and the real estate title documents lodged by Ukkestad in support of the petition, it is a simple matter of referring to publicly available records to determine Mabee's real estate holdings.  Referring to publicly available documents to establish a parties' real estate holdings is the same method that *Alameda* used to make an otherwise incomplete description of real property certain enough that it could be reliably identified and to conclude that the description complied with the statute of frauds.[7]

---

[7]     We note that the probate court cited *Kucker*, *supra*, 192 Cal.App.4th 90, to support its conclusion that the Trust Instrument did not describe the Two Parcels with sufficient certainty to satisfy the statute of frauds contained in Civil Code section 1624.  The issue in *Kucker* was whether a settlor's general assignment of "all of my right, title and interest in all property owned by me, both real and personal and wherever located" was sufficient under the statute of frauds to convey specific shares of stock.  (*Kucker*, at p. 92.)  After concluding that the statute of frauds did not apply because personal property was at issue, the court stated in dicta that, had real property been at issue, "[t]he General Assignment was ineffective to transfer the [settlor's] real property to the Trust" because "the General Assignment was required to describe the real property so that it could be identified."  (*Id.* at p. 95.) As *Kucker*'s statements about the real property issue are dicta, we do not follow them as precedential.  (*Areso v. CarMax, Inc.* (2011) 195 Cal.App.4th 996, 1006 ["Mere observations by an appellate court are dicta and not precedent, unless a statement of law was 'necessary to the decision, and therefore binding precedent.' "].)  Further, *Kucker*'s analysis is not persuasive on the issue of the type of writing necessary to convey a settlor's interest in real property to the trust.  For its conclusion, *Kucker* relies on a string cite to *Sterling*, *supra*, 40 Cal.4th 757, and *Osswald*, *supra*, 49 Cal.App.4th 812.  However, we have discussed both of those cases in detail above, and they do not support the proposition that a settlor is barred by the statute of frauds from conveying all of his or her real property to a trust by making a broad statement referring to all real property.  Moreover, *Kucker* did not consider *Brusseau*, *supra*, 201 Cal. 225, *Pettigrew*, *supra*, 63

9

We therefore conclude that because the Trust Instrument states that all of Mabee's "right, title and interest" to "all of his real . . . property" is included in the Trust's assets, and it is possible by resorting to extrinsic evidence to determine that Mabee held title to the Two Parcels, the statute of frauds creates no bar to Ukkestad's petition for an order confirming that the Two Parcels are part of the Trust's assets. The probate court accordingly erred by concluding that the statute of frauds was not satisfied and by denying the petition on that ground.

## DISPOSITION

We reverse the probate court's order denying the petition for an order confirming trust assets, and we remand with directions that the probate court enter an order granting the petition.

IRION, J.

WE CONCUR:

BENKE, Acting P. J.

MCDONALD, J.

---

Cal. 396, or *Bumb*, *supra*, 51 Cal.2d 294, each of which approve the conveyance of real property made by a general reference to all of a party's real property.