Filed 9/6/16  Gorlick v. Arouty CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LORRAINE GORLICK,<br><br>    Petitioner and Respondent,<br><br>    v.<br><br>STANLEY AROUTY, as Trustee, etc.,<br><br>    Defendant and Appellant. | B266867<br><br>(Los Angeles County<br>Super. Ct. No. BP134478) |

APPEAL from an order of the Superior Court of Los Angeles County, Lesley C. Green, Judge.  Affirmed.

Stern & Goldberg, Alan N. Goldberg and Aaron M. White for Objector and Appellant.

Bases & Bases, Jeffrey M. Bases and Arielle N. Bases; Benedon & Serlin, Gerald M. Serlin and Douglas G. Benedon, from Petitioner and Respondent.

# I.  INTRODUCTION

Defendant, Stanley Arouty, appeals from orders:  confirming the existence and validity of a trust under Probate Code[1] section 17200, subdivision (a); adjudicating the merits of a section 850, subdivision (a)(3)(A) claim; and conveying real property to a trust.  Plaintiff, Lorraine Gorlick, filed a petition to confirm the validity of a trust entitled "Revocable Living Trust Agreement," purportedly created on December 9, 2005 (December 2005 trust) by Esther Hasson, the settlor.  The settlor was the mother of plaintiff and defendant.  Defendant is the named trustee of the December 2005 trust.

Following trial, the probate court ruled that the December 2005 trust was valid.  The probate court also found the settlor had transferred her real property into the December 2005 trust.  On appeal, defendant contends the settlor's real property is not an asset of the December 2005 trust.  Defendant also appeals from the admission and exclusion of certain evidence at trial.  We affirm the orders under review.  (Defendant has also appeared as an objector.  However, the principal allegations are directed at him in connection with the December 2005 trust.  For clarity's purposes, we will refer to him as defendant.)

# II.  BACKGROUND

## A.  The Property

The settlor and her husband, Morris Hasson, purchased the real property located at 1216 and 1218 South La Jolla Avenue, Los Angeles, California, (the property) in 1955.  Morris Hasson died on February 19, 1985.  The settlor died on December 25, 2011.

---

[1]  Further statutory references are to the Probate Code unless otherwise noted.

## B. Plaintiff's Petition and December 2005 Trust

On May 3, 2012, plaintiff filed a petition seeking orders: finding the December 2005 trust to be valid; confirming trust assets; and removing defendant as trustee of the December 2005 trust. The December 2005 trust states at article I, section B: "ESTHER HASSON, as Trustor, does hereby assign, convey and deliver to the Trustee, all of the Trustor's right, title, and interest in and to all real and personal property, tangible or intangible, of any nature, in any location, which may be owned by the Trustor or later acquired by the Trustor . . . . Said property shall include, but shall not be limited to, the assets listed on Schedule A . . . ."

Article IV, section A of the December 2005 trust states in part: "Upon the death of the Trustor, and after the payment of the Trustor's just debts, funeral expenses and expenses of last illness, and the disbursements listed in Article III of this Trust, REAL PROPERTY DISTRIBUTION: That real property commonly known as 1216 & 1218 S. La Jolla Avenue, Los Angeles, CA 90035 shall be retained in trust, STANLEY AROUTY to live in the property for not more than [sic] 1 year rent free, and who will obtain a loan within 1 years [sic] from the date of the trustor's death, retaining all rights and title and pay 1/2 of the value of the real property to LORRAINE GORLICK. STANLEY AROUTY is given the right to determine the date of the buy out within that 1 year period. The buy out must be at fair market value within the 1 year term. Until exercised by STANLEY AROUTY, the real property commonly known as 1216/1218 South La Jolla Ave and all mineral rights shall remain in the ESTHER HASSON TRUST. All rental monies from 1218 S. La Jolla Avenue to be paid to Lorraine Gorlick. [sic] If no loan is obtained with in 1 years [sic] from the date of the trustor[']s death, the real property shall be sold by STANLEY AROUTY and LORRAINE GORLICK in cooperation with each other in the sale. The proceeds of the real property shall be divided equally between STANLEY AROUTY and LORRAINE GORLICK, after escrow expenses are paid." The terms "shall be retained in trust," "paid to Lorraine Gorlick," and the number "1" before the words "year" and "years" were handwritten

3

modifications.  The page containing Article IV contains the signatures of plaintiff, defendant and the settlor.  Defendant was named as the trustee.  Plaintiff was named as the successor trustee.

Plaintiff subsequently filed a supplement to her May 3, 2012 petition.  Plaintiff requested that the probate court void:  a grant deed executed purportedly on April 10, 1990 (1990 grant deed) as a forgery; a March 24, 2005 irrevocable trust purportedly signed by the settlor (March 2005 trust) as a forgery; and joint tenancy deeds signed July 25, 2011, on undue influence grounds.

## C.  Trial

### 1.  Overview

The probate court bifurcated the trial into two phases.  The first phase, which is on appeal here, addressed the validity of the December 2005 trust and whether the 2011 joint tenancy deeds were forgeries.  The trial's first phase specifically did not include issues concerning the settlor's mental health.  Trial commenced on January 20 and concluded on January 23, 2015.

### 2.  1990 grant deed

The 1990 grant deed was purportedly executed April 10, 1990.  Barbara Waldron was the notary public who witnessed the 1990 grant deed's execution on July 16, 1993.  If, valid, the 1990 grant deed would transfer the property to defendant.

Defendant testified to the following.  He moved into the property in 1993.  Defendant first saw the grant deed in 1990 when accompanying the settlor to the law office of Stephen Gray.  Defendant maintained that he and the settlor entered into an oral agreement.  Defendant was obligated to care for the settlor for the rest of her life in exchange for the property.  The settlor did not deliver the 1990 grant deed to defendant

4

until September 28, 1995, on his birthday. The 1990 grant deed was never recorded. Defendant did not disclose the existence of this grant deed in 1995 except to Guy Gorlick. (For clarity's purposes, we will refer to Guy Gorlick as Mr. Gorlick.) Mr. Gorlick is plaintiff's son.

Defendant is a lawyer who practices criminal defense. In 1990, defendant had entered into a partnership with another attorney who had purportedly stolen money from clients. State bar investigators interviewed defendant and inquired as to his financial stability to maintain the law practice. According to defendant, the settlor would not transfer the property to him until his state bar problems were resolved. Defendant denied ever showing the state bar investigators the 1990 grant deed. Defendant did not disclose the 1990 grant deed's existence to a bankruptcy trustee.

### 3. March 2005 trust

The settlor purportedly signed the March 2005 trust on March 24, 2005. Notably, the March 2005 trust provides regarding real property distribution, "Real property to go to STANLEY AROUTY." Two witnesses, Michelle Park and Alex Solomon, purportedly witnessed the March 2005 trust's signing by the settlor. (Because there are two witnesses named Solomon, we refer to Alex Solomon by his first name only. No disrespect is intended.)

Defendant testified that he discussed with the settlor whether she wanted the trust to be revocable or irrevocable. Defendant asserted the settlor wanted it to be irrevocable to make it simple, complete and to "get rid of it right now." Defendant asserted plaintiff stole the March 2005 trust from his home office. Defendant also prepared a trust document on July 21, 2005, for the settlor. The July 2005 trust document was a copy of the March 2005 trust. The July 21, 2005 trust document was never signed. Plaintiff testified she had never seen the March 2005 trust prior to this litigation.

5

## 4. December 2005 trust

### a. plaintiff's testimony

Plaintiff and the settlor first visited Harry Olivar, an estate planning attorney, at his office sometime in June or July 2005. Mr. Olivar drafted a trust document in accordance with the settlor's wishes. The draft trust would divide the settlor's property equally between plaintiff and defendant. Defendant produced a separate trust which he wanted the settlor to sign that would give the property to him only. The settlor did not sign a trust instrument at that time.

In December 2005, plaintiff, the settlor, and Nicholas Solomon, defendant's son, went to Mr. Olivar's office. Mr. Olivar had prepared the December 2005 trust in compliance with the settlor's wishes. Mr. Solomon called defendant regarding the trust. The parties waited two-and-a-half hours until defendant arrived. Defendant arrived with his own draft of a trust instrument. Mr. Olivar helped negotiate the current terms of the December 2005 trust. After around four hours, the settlor, defendant, and plaintiff left Mt. Olivar's office. They returned to the settlor's home because she was not feeling well.

There, plaintiff, defendant and the settlor initialed the first and second pages of the December 2005 trust. Defendant, plaintiff and the settlor signed the fifth page. The settlor initialed the December 2005 trust on pages 6 and 8 through 10. Plaintiff testified the settlor signed the last page of the December 2005 trust. The signing of the December 2005 trust occurred at the settlor's house. After signing, the settlor said, "Oh, what a relief, it's finally done." Plaintiff also testified that a grant deed transferring the property to the December 2005 trust was signed by the settlor and notarized.

In 2006, plaintiff requested that defendant send her via facsimile transmission the original copy of the December 2005 trust. In response, defendant sent her an incomplete copy of the December 2005 trust with only five pages. When she asked that he resend it, defendant sent her another copy that was cut off on page 17. Missing from the copy of

6

the December 2005 trust sent by defendant was the signature page which contained the settlor's signature.

### b. Lisa Cardenas's testimony

Ms. Lisa Cardenas is Mr. Olivar's former legal secretary. Mr. Olivar died in 2009. Ms. Cardenas helped maintain Mr. Olivar's legal files, including the settlor's estate planning file. The settlor's file contained all the documents pertaining to Mr. Olivar's work for her. She testified defendant picked up the settlor's file after Mr. Olivar's death. Mr. Olivar prepared a draft declaration of trust dated July 1, 2005, for the settlor. The handwritten parts on page five of the December 2005 trust appeared to be by Mr. Olivar.

### c. Luna Gorlick's testimony

Ms. Gorlick is plaintiff's daughter. Ms. Gorlick saw the settlor frequently from October 2005 to July 2006. Ms. Gorlick and the settlor discussed estate related issues. The settlor wanted the property to go to both plaintiff and defendant. In late 2004, the settlor expressed irritation because defendant and Mr. Gorlick not providing her with a will. The settlor said sometime in mid-December 2005 that her estate plan was finished and she was relieved.

### d. Mr. Gorlick's testimony

Mr. Gorlick is plaintiff's son. He is a litigation attorney. Mr. Gorlick maintained a close relationship with the settlor. He conversed with her an average of once a week until late 2010. Mr. Gorlick refused to assist the settlor with drafting her estate planning because he believed himself to be unqualified. Mr. Gorlick denied ever hearing from the settlor say that she wanted only defendant to receive the property. Rather, Mr. Gorlick testified that the settlor wanted the property divided evenly between plaintiff and

7

defendant. Mr. Gorlick did not believe defendant was competent to draft the settlor's estate plan. Towards the end of the summer in 2005, Mr. Gorlick recalled seeing an unsigned trust document, prepared by defendant. The unsigned trust document purported to give the property entirely to defendant. Mr. Gorlick discussed this unsigned trust document with the settlor. The settlor did not sign this trust document. Mr. Gorlick believed the settlor did not read the unsigned trust document but would just take defendant's word as to what it said. Sometime in the second or third week of December 2005, the settlor told Mr. Gorlick she had signed a trust instrument. Mr. Gorlick testified the settlor was "super happy" that everything had been taken care of and signed.

### e. Defendant's testimony

Mr. Solomon telephoned defendant on December 9, 2005. Defendant testified: "I was in Orange County. I got a call from my son, we're being held at Harry Olivar's. [Plaintiff] told me that [the settlor] had a medical emergency and they had a guy who wants me to sign your name and I'm not signing your name." Mr. Solomon explained that Mr. Olivar wanted defendant's signature for the trust. Defendant testified that the settlor did not agree to anything regarding the December 2005 trust. Defendant contended that the signatures on page five of the December 2005 trust did not indicate agreement by the settlor or her two children. Defendant informed Mr. Olivar of the existence of the March 2005 trust. Defendant however never produced a copy of the March 2005 trust for Mr. Olivar. Defendant denied preparing the December 2005 trust.

### 5. 2011 joint tenancy deeds

The 2011 joint tenancy deeds purported to make the settlor and defendant joint tenants of the property. The first joint tenancy deed provides in pertinent part: "FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, [¶] Esther Hasson a widow and mother of S. Arouty a single man [¶] hereby GRANT(S) to [¶] her

8

son S. Arouty, as Joint Tenants [¶] [the property]." The first joint tenancy deed was recorded on July 26, 2011. The second joint tenancy deed provides in pertinent part: "FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, [¶] Esther Hasson, a widow [¶] hereby GRANT(S) to [¶] Esther Hasson, a widow and her son S. Arouty, a single man, as Joint Tenants [¶] [the property]." The second joint tenancy deed was recorded September 14, 2011. They were both purportedly executed on July 25, 2011.

Robin Rutt is a notary public. Defendant hired Mr. Rutt. Mr. Rutt testified that he witnessed the settlor sign his notary book. Mr. Rutt also took the settlor's thumbprint. Mr. Rutt testified that Dona Powell and Alex Solomon both signed the notary book as witnesses.

Andrea McNichol is a handwriting analyst hired by plaintiff. Ms. McNichol testified that based on her opinion, Mr. Rutt forged the settlor's signature. Ms. McNichol admitted she relied in part upon medical evidence regarding the settlor in forming the foregoing opinion.

### D. Statement of decision

On April 30, 2015, the probate court issued its statement of decision. The probate court found the 1990 grant deed to be a sham. The probate court noted the 1990 grant deed was dated April 10, 1990, but defendant moved in with the settlor in 1993. The probate court found it was inconsistent that the settlor had already transferred the property to defendant prior to him living with her. The probate court inferred that the 1990 grant deed was created to assist defendant with establishing financial stability for the state bar investigation in 1990. The probate court noted the 1990 grant deed was never recorded, never mentioned by the settlor, and never mentioned by defendant during the estate planning discussions. The probate court concluded the settlor never intended to transfer the property to defendant with the 1990 grant deed. The probate court found, "[The 1990 grant deed] either was prepared solely to assist [defendant] with his

9

professional and financial problems or it was created after that and never signed by [the settlor] at all."

The probate court found defendant was not credible when he testified that he had not prepared a draft of nor seen the December 2005 trust prior to the December 9, 2005 execution of the document. As found by the probate court, "The December 9, 2005, Revocable Trust Agreement has the same typeface and clearly comes from the same form as the March and July trusts created by [defendant]." By contrast, the probate court found Ms. Gorlick and Mr. Gorlick to be credible when they testified the settlor repeatedly asked for assistance for estate planning in 2004 and 2005. The probate court found the circumstances inconsistent with defendant's testimony that he had fully read and explained the March 2005 trust to the settlor: "Key to this inquiry is [defendant's] express testimony that he had fully read and explained the March 2005 trust to [the settlor]. He testified that he told her the differences between a revocable and an irrevocable trust, and she specifically and clearly asked him to make the trust irrevocable so they could 'get rid of it, right now'(referring to the issue of how her estate would be distributed). Where was this woman, who was so clear and firm in March, when asked to sign a new trust in July and December? Why didn't she or [defendant] say anything?" The probate court inferred that because the settlor had never mentioned the March 2005 trust, it was never signed.

The probate court made three conclusions relevant here. First, the probate court found the December 2005 trust was signed by the settlor. The probate court noted defendant was in possession of the original December 2005 trust. The probate court found defendant willfully suppressed evidence for his benefit. The probate court noted the copies of the December 2005 trust form sent by defendant to plaintiff via facsimile transmission were missing pages. Second, the probate court found that even if it was not signed, sufficient key terms were either initialed or signed by the necessary parties. The probate court cited *Estate of Heggstad* (1993) 16 Cal.App.4th 943, 947-948 (*Heggstad*) in support of its conclusion that the settlor had created a trust under section 15200, subdivision (b). Third, the probate court found no separate deed was required because

10

the December 2005 trust was a written instrument that conveyed the property into the trust.  The probate court relied Article I, section B as containing specific conveyance language for the property.  Article IV, section A specifically identified the property is that being transferred into the trust.  The probate court also noted the settlor and defendant both signed the trust instrument.

The probate court declined to resolve the issue of whether the 2011 joint tenancy deeds were forged at this phase of the trial.  Ms. McNichol relied on the settlor's medical condition and mental capacity informing an opinion that a forgery had occurred.  Such medical evidence was not at issue during the first phase of the trial.  The probate court concluded that even if the 2011 joint tenancy deeds were genuine, the issue was moot.  This was because the property had already been transferred into the December 2005 trust.

The probate court ruled:  the settlor signed the December 2005 trust and it was valid; even if the December 2005 trust was not signed, key terms being signed by all the parties established the creation of a trust; the settlor intended to distribute the property evenly between plaintiff and defendant pursuant to Article IV of the trust; the March 2005 trust was not signed and had no effect; and the issue of whether the 2011 grant deeds were forged was moot at this trial phase.  This appeal followed.

## III.  DISCUSSION

### A.  Defendant's Contentions

Defendant raises five arguments.  First, he contends the probate court erred by finding the property had been transferred to the trust.  Second, he argues a witness was improperly excluded from testifying at trial.  Third, he contends the probate court should not have permitted improper impeachment of defendant on a collateral matter.  Fourth, he asserts the probate court erred by purportedly enforcing a time limit on defendant which lead to him being unable to call three additional witnesses to testify.  Fifth, he asserts the probate court erred by introducing the settlor's death certificate as medical evidence.

11

B.  Standards of Review

Generally, we interpret written instruments de novo.  (*Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866; *Estate of Powell* (2000) 83 Cal.App.4th 1434, 1439-1440; *Ike v. Doolittle* (1998) 61 Cal.App.4th 51, 73.)  We review the trial court's rulings on the admissibility or discretionary exclusion of evidence for abuse of discretion.  *(Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317; *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1685.)  We review the trial court's resolution of disputed facts for substantial evidence.  (*De Anza Enterprises v. Johnson* (2002) 104 Cal.App.4th 1307, 1315; *Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 632.)

C.  The Property Was Transferred to the December 2005 Trust

Defendant contends the probate court erred by determining the property was transferred to the December 2005 trust under a purported exception in *Heggstad*.  The Court of Appeal in *Heggstad, supra*, 16 Cal.App.4th at page 950, held:  "[A] written declaration of trust by the owner of real property, in which he names himself trustee, is sufficient to create a trust in that property, and that the law does not require a separate deed transferring the property to the trust. (Fn. omitted.)"  (See *Carne v. Worthington* (2016) 246 Cal.App.4th 548, 559.)  We note the probate court here did not actually rule that the *Heggstad* exception transferred the property into the December 2005 trust.  The probate court cited *Heggstad* to alternatively conclude that the December 2005 trust was validly created even if the settlor did not sign the trust's last page.  Defendant does not challenge the probate court's initial finding that the settlor signed the December 2005 trust.

The probate court ruled the December 2005 trust document itself was sufficient to transfer the property into the trust.  Section 15200, subdivision (b) states in part:  "[A] trust may be created by . . .  [¶]  transfer of property by the owner during the owner's

12

lifetime to another person as trustee." (*Estate of Heggstad, supra*, 16 Cal.App.4th at p. 948.)  Civil Code section 1091 provides in pertinent part, "An estate in real property . . . can be transferred only by operation of law, or by an instrument in writing, subscribed by the party disposing of the same, or by his agent thereunto authorized by writing."  (See *Estate of Stephens* (2002) 28 Cal.4th 665, 672.)  To transfer real property, there must be: an identifiable grantor and grantee; a signed writing; delivery of specific real property by the grantor; and acceptance by the grantee.  (Civ. Code, §§ 1054, 1059, 1091, 1092; *Rothney v. Rothney* (1940) 41 Cal.App.2d 566, 570; 12 Witkin, Summary of Cal. Law (10th ed. 2005) Real Property, § 254, pp. 310-311.)

Here, the December 2005 trust identified the grantor as the settlor and the trustee as defendant.  The December 2005 trust is in writing.  As found by the probate court and not disputed on appeal by defendant, the settlor signed the December 2005 trust.  The property was specifically identified on page 5 of the December 2005 trust at Article IV, section A.  The trust document indicates the settlor intended to deliver her interest in the property to defendant as trustee of the December 2005 trust by providing:  "ESTHER HASSON, as Trustor, does hereby assign, convey and deliver to the Trustee, all of the Trustor's right, title and interest in and to all real and personal property . . . ."  Ms. Gorlick's, Mr. Gorlick's, and plaintiff's testimony all indicated the settlor intended the property to be part of the December 2005 trust.  Defendant's signature on the top of page 5 of the December 2005 trust and his possession of the original December 2005 trust, indicated acceptance.  The December 2005 trust also satisfied the statute of frauds.  (See § 15206 ["A trust in relation to real property is not valid unless evidenced by one of the following methods:  [¶]  (a)  By a written instrument signed by the trustee . . . .  [¶]  (b) By a written instrument conveying the trust property signed by the settlor . . . ."]; see *Ukkestad v. RBS Asset Finance, Inc.* (2015) 235 Cal.App.4th 156, 161 (*Ukkestad*).)  All the requirements for a transfer of real property were met.  Thus, we conclude the December 2005 trust instrument is itself a conveyance that transferred the property into that instrument.

13

Defendant asserts a separate deed was required to transfer the property into the December 2005 trust.  In support, defendant cites *Ukkestad, supra*, 235 at pages 158-160.  In *Ukkestad*, the settlor executed a trust appointing himself as trustee.  (*Id.* at p. 158.)  The trust instrument did not describe the real property which was the subject of the appeal.  (*Id*. at p. 159.)  The probate court denied the co-trustee's petition for an order confirming the real property as trust assets.  (*Id.* at p. 160.)  The Court of Appeal reversed and ordered the probate court to grant the co-trustee's petition.  (*Id*. at p. 158.)  The Court of Appeal held, "It is well established that if two specific requirements are met, real property may be made part of a trust's assets without a separate deed transferring property to the trust.  [Citation.]"  (*Id.* at p. 160.)  The first requirement was that the owner of the real property created the trust with himself as trustee.  (*Ibid*.)  The second requirement was that the statute of frauds must be satisfied.  (*Id.* at pp. 160-161.)  The Court of Appeal held the statute of frauds was satisfied because the trust instrument referred to all of the settlor's real property as being transferred into the trust.  And the Court of Appeal also held publicly available documents sufficiently established the settlor's real property holdings.  (*Id.* at pp. 163-164.)

*Ukkestad* is distinguishable from the case here.  In *Ukkestad*, no inter vivos transfer of title was necessary because the grantor of the real property conveyed it to himself as trustee.  (*Ukkestad, supra*, 235 Cal.App.4th at p. 158.)  *Ukkestad* and *Heggstad* both do not discuss the situation here where the trust instrument here is sufficient to be a real property conveyance.  Here, as noted, the December 2005 trust document satisfied all the requirements for a conveyance of real property from the settlor and owner to the trustee of the trust.  Accordingly, the probate court correctly ruled the property is an asset of the December 2005 trust.

D.  The Probate Court Did Not Commit Reversible Error by Excluding Barbara Waldron's Testimony

Defendant asserts the probate court erred by excluding the testimony of Ms. Waldron.  Ms. Waldron notarized the 1990 grant deed.  Defendant contends that her exclusion was reversible error because her testimony would contradict the probate court's finding that the transaction was a sham.  Defendant asserts she would have testified as to the settlor's intent and witnessing the actual execution of the 1990 grant deed.

At trial on January 21, 2015, defendant sought to call Ms. Waldron as a witness. Plaintiff objected and moved to exclude her on the grounds that she was not listed or mentioned in defendant's witness list at the final trial conference or any meeting prior to trial.  Defendant first listed Ms. Waldron on his amended witness list filed January 15, 2015.  As noted, trial commenced on January 20, 2015.  Defendant contended there was no surprise because Ms. Waldron was clearly identified as the notary on the 1990 grant deed.   The following exchange at trial occurred regarding Ms. Waldron:  "THE COURT:  So your offer of proof is that this person will testify that she did notarize the [1990 grant] deed?  [¶]  MR. GOLDBERG [defendant's counsel]:  And that's the only reason she's here, your honor. . . .  [¶] . . . [¶]  THE COURT:  All right.  Mr. Bases [plaintiff's counsel], let's assume for a moment that this witness testifies that she's a notary.  I'm sure she'll testify she doesn't remember Mr. Arouty or him signing it or any such thing, but she'll say, yeah, I notarized it.  [¶]  Does that make that much difference to your case?  I mean, it's a deed that is, apparently, on its face notarized, is it not?  [¶] MR. BASES:  Well, it is. . . .  It's apparently notarized."  The probate court ruled:  "The only issue before me right this moment is whether I should exclude Ms. Waldron.  Given the late notice and the fact that on its face the deed is notarized or it's not -- all she could testify to is she's a notary -- so I'm going to grant the motion to exclude her as a witness."

Defendant's contention that Ms. Waldron would have provided testimony as to the settlor's intent to transfer the property at the time the deed was executed was not

15

presented to the probate court. Thus, the entire issue has been forfeited as to any question concerning Ms. Waldron's proposed testimony concerning the settlor's intent. (Evid. Code § 354; *Doers v. Golden Gate Bridge, Highway and Transportation Dist.* (1979) 23 Cal.3d 180, 184, fn. 1; *In re Aaron B.* (1996) 46 Cal.App.4th 843, 846.) In any event, we review admissibility of evidence issues for an abuse of discretion. (*Olson v. American Bankers Ins. Co.* (1994) 30 Cal.App.4th 816, 826; *Kessler v. Gray* (1978) 77 Cal.App.3d 284, 291.) The probate court did not abuse its discretion by excluding Ms. Waldron's testimony. Defendant's offer of proof was only that Ms. Waldron would testify she notarized the 1990 grant deed. However, the parties did not dispute whether the 1990 grant deed was notarized. Further, the vague offer or proof failed to explain what Ms. Waldron would have testified to on the intent question. The probate court could reasonably find the probative value of Ms. Waldron's testimony was low and substantially outweighed by the probability it would result in an undue consumption of time. (Evid. Code § 352, *20th Century Ins. Co. v. Garamendi* (1994) 8 Cal.4th 216, 328-329, fn. 31.)

Finally, trial began on January 20, 2015, yet defendant's amended witness list, which included Ms. Waldron, was filed only five days prior to trial. January 17 and 18, 2015, fell on a weekend. January 19, 2015, was a court holiday. Thus, the amended witness list was filed two court days prior to the commencement of trial on January 20, 2015. The Rules of the Superior Court of Los Angeles County, rule 3.25(f)(1) requires counsel to serve and file trial witness lists five days prior to the final status conference. The final status conference was on January 7, 2015. Rule 3.25(f)(1) of the local court rules further provides, "Failure to exchange and file these items may result in not being able to call witnesses . . . ." Accordingly, the probate court did not abuse its discretion by excluding Ms. Waldron's testimony.

16

E.  The Probate Court Did Not Commit Reversible Error by Allowing Impeachment of Defendant Regarding State Bar Investigation, Financial Condition, and Bankruptcy

Defendant asserts the probate court erred by permitting plaintiff to impeach him on collateral matters, namely:  his financial condition; the state bar investigation; and the failure to reveal during his bankruptcy proceedings that he had received the property pursuant to the 1990 grant deed.  Defendant contends these matters had no bearing on the validity of the December 2005 trust, March 2005 trust, or 2011 joint tenancy deeds.

Evidence Code section 780, subdivision (i) provides that a witness may be impeached as to the existence or nonexistence of any fact testified to by him or her. (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 327.)  There is no absolute bar to impeachment on collateral matters.  (*People v. Lavergne* (1971) 4 Cal.3d 735, 739-742; *People v. Morrison* (2011) 199 Cal.App.4th 158, 164.)  The admissibility of collateral testimony is generally a matter of discretion.  (*People v. Mayfield* (1997) 14 Cal.4th 668, 784, overruled on another point in *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2; *People v. Fusaro* (1971) 18 Cal.App.3d 877, 885, disapproved on another point in *People v. Brigham* (1979) 25 Cal.3d 283, 292, fn. 4.)  Issues concerning impeachment on collateral matters are reviewed for an abuse of discretion.  (*People v. Gurule* (2002) 28 Cal.4th 557, 619; *People v. Lavergne, supra*, 4 Cal.3d at p. 744.)  We view this issue more as a question of relevance than a matter of collateral impeachment.  Relevance rulings are reviewed for an abuse of discretion.  (*People v. Waidla* (2000) 22 Cal.4th 690, 717-718; *City of Ripon v. Sweetin* (2002) 100 Cal.App.4th 887, 900-901.)

Defendant testified as to whether the 1990 grant deed conveying the property to him was valid.  If it was, then the property would not be part of the December 2005 trust. All of these matters were relevant as to whether the settlor intended to convey the property to defendant by the 1990 grant deed.  As found by the probate court, "[The 1990 grant deed] either was prepared solely to assist [defendant] with his professional and financial problems or it was created after that and never signed by [the settlor] at all." (See *Blackburn v. Drake* (1963) 211 Cal.App.2d 806, 811 ["Intent to pass title is an

essential element of delivery and the question of intent is a question of fact to be determined by the trial court or jury upon all the circumstances surrounding the transaction."]; *Jones v. Jones* (1960) 183 Cal.App.2d 468, 472 [same].)

The probate court did not abuse its discretion when it permitted defendant to be questioned regarding the state bar investigation and related issues concerning his financial situation. This testimony indicated: as result of the state bar investigation, defendant's law practice was seized, a receiver was appointed; and he was required to pay $6,000 per month for a special master. Further, the testimony indicated that defendant was required to show the law practice had a specific level of financial stability because of claims by creditors. Despite the fact he allegedly owned the property pursuant to the grant deed, he never told the state bar investigators about this alleged asset. Further, defendant failed to reveal the existence of this alleged asset to the bankruptcy trustee. The failure to do so was circumstantial evidence that he did not have any ownership interest in the property. No abuse of discretion occurred whether the matter is reviewed as a question of relevance, undue prejudice or collateral impeachment.

### F. The Probate Court Did Not Commit Reversible Error by Purportedly Limiting Defendant's Time to Present his Case-in-Chief

Defendant contends he was not permitted to present his case-in-chief in full because of the probate court's unfair time constraints. Defendant argues plaintiff took 65 percent of the allotted trial time. Defendant asserts that because of these time constraints, he could not call three witnesses: Dona Powell; William Tiffany; and Nicholas Solomon.

A trial court has the inherent authority to fairly and efficiently administer judicial proceedings before it. (Code Civ. Proc., § 128; *People v. Engram* (2010) 50 Cal.4th 1131, 1146; *Cal. Crane School, Inc. v. Nat. Com. for Certif. of Crane Operators* (2014) 226 Cal.App.4th 12, 22.) However, denying a party's right to testify or offer evidence establishing its case may be reversible error. (*Id.* at pp. 22-23; *In re Marriage of Carlsson* (2008) 163 Cal.App.4th 281, 291.) As stated previously, a trial court has

18

discretion to exclude evidence if its probative value is substantially outweighed by undue consumption of time. (Evid. Code, § 352.) The trial court did not abuse its discretion by excluding Nicholas's, Ms. Powell's and Mr. Tiffany's testimony.

Defendant's offer of proof at trial was Nicholas would testify regarding what occurred at the meeting on December 9, 2005. However, both plaintiff and defendant testified as to what occurred at the December 9, 2005 meeting. The offer of proof does not indicate how Nicholas would testify. The probate court, without abusing its discretion, could reasonably find Nicholas's testimony would thus be cumulative. Also, defendant contends Ms. Powell and Mr. Tiffany would have testified regarding the 2011 joint tenancy deeds. Ms. Powell would have testified regarding the execution of the 2011 joint tenancy deeds. Mr. Tiffany would have testified as to the preparation of the joint tenancy deeds after speaking with the settlor. However, Mr. Rutt and defendant both testified regarding the validity of the 2011 joint tenancy deeds. Ms. Powell's and Mr. Tiffany's testimony would also be cumulative. Accordingly, the probate court acted within its discretion under Evidence Code section 352 to exclude Nicholas's, Ms. Powell's, and Mr. Tiffany's testimony.

Even assuming there was error, we find no prejudice necessitating reversal. The Court of Appeal has held: "Article VI, section 13, of the California Constitution provides that a judgment cannot be set aside '. . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' This fundamental restriction on the power of appellate courts is amplified by Code of Civil Procedure section 475, which states that trial court error is reversible only where it affects '. . . the substantial rights of the parties . . . ,' and the appellant 'sustained and suffered substantial injury, and that a different result would have been probable if such error . . . had not occurred or existed.' Prejudice is not presumed, and the burden is on the appealing party to demonstrate that a miscarriage of justice has occurred." (*Waller v. TJD, Inc.* (1993) 12 Cal.App.4th 830, 833; accord, *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 800; *Kim v. The True Church Members of Holy Hill Community Church* (2015) 236 Cal.App.4th 1435, 1444; *Grail*

19

*Semiconductor, Inc. v. Mitsubishi Electric & Electronics USA, Inc.* (2014) 225 Cal.App.4th 786, 799.)

As noted, Nicholas's testimony was fully developed by other evidence presented directly by plaintiff and defendant. Ms. Powell and Mr. Tiffany's testimony would not have made it reasonably probable that a result more favorable to defendant would be reached absent this purported error. The 2011 joint tenancy deeds, even if valid, became moot. As discussed above, the property had been transferred to the December 2005 trust. The 2011 joint tenancy deeds would have had no effect.

As noted, Nicholas's testimony was fully developed by other testimony from plaintiff and defendant. Even if it was error to exclude his testimony, such error is harmless. (See *Larimer v. Smith* (1933) 130 Cal.App. 98, 104 ["Erroneous rulings excluding testimony are harmless, when the evidence is otherwise fully developed by the same or other witnesses."]; accord, *Berg v. Sonen* (1964) 230 Cal.App.2d 434, 441.)

G.  The Probate Court Did Not Commit Reversible Error by Admitting Evidence Regarding The Settlor's Cause of Death

Defendant contends the probate court erred by admitting medical evidence concerning the settlor's cause of death. The settlor's death certificate was admitted at trial. The probate court's statement of decision merely provides, "The cause of death listed on the death certificate was end stage senile dementia." Defendant has not demonstrated how this is reversible error. Defendant contends that end stage senile dementia is not a possible medical cause of death. However, the probate court made no determination that end stage senile dementia actually caused the settlor's death. The death certificate is an admissible public record. (Evid. Code, § 1280.) We do not find the probate court erred by admitting the settlor's death certificate. Even if the probate court erred, defendant has not demonstrated how it is reasonably probable that a result more favorable to him would have resulted absent this purported error. The settlor's cause of death was not at issue in this trial phase.

20

## IV.  DISPOSITION

The order is affirmed.  Plaintiff, Lorraine Gorlick may recover her appellate costs from defendant, Stanley Arouty.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

TURNER, P. J.

We concur:

KRIEGLER, J.

RAPHAEL, J.[*]

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.